IRON WORKERS LOCAL # 272, William J. Phillips, Howard Jones, and Merle T. Ledbetter, Individually and as Trustees of Iron Workers Local # 272, Health and Welfare Fund, Pension Fund, and Annuity Fund, Plaintiffs-Appellants Cross-Appellees,

v.

Eugene BOWEN, Monroe Phagan and Leo Beck, Defendants-Appellees,

Eugene Bowen, Defendant-Appellee Cross-Appellant.

No. 78–1789.

United States Court of Appeals, Fifth Circuit.

Aug. 25, 1980.

Kurzban & Kurzban, Marvin Kurzban, Ira Kurzban, Miami, Fla., for plaintiffs-appellants cross-appellees.

Aronovitz & Weksler, Bernard B. Weksler, Miami, Fla., for Eugene Bowen.

Wolf & Schoninger, Leonard H. Wolf, Miami, Fla., for Monroe Phagan & Leo Beck.

Before JONES, GEE and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

This case arose from a dispute between union and management trustees of the Iron Workers Local No. 272 Annuity Fund, which is one of three Local 272 fringe benefit funds jointly administered by the same

union and management trustees pursuant to section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). The seeds of the present controversy were sown in January 1975 when plaintiffs William Phillips and Merle Ledbetter and the predecessor of plaintiff Howard Jones became the three union trustees of the funds.[1] At that time, their management counterparts were Martin Bessell, Charles Baker, and defendant Eugene Bowen. By mid-1976, however, Bessell and Baker had been replaced by defendants Monroe Phagan and Leo Beck. Both Phagan and Beck were members of the Steel and Ornamental Erectors Association of South Florida ("SOEA"), which served as the collective bargaining representative of management. The president of SOEA, and the person who appointed Phagan and Beck, was Eugene Bowen.

Upon assuming their tenure as union trustees of the annuity fund, plaintiffs Phillips and Ledbetter and the predecessor of plaintiff Jones (hereinafter "the union trustees") began investigating large losses that the fund had sustained in recent years. They eventually concluded that the losses were at least in part the result of improprieties by the "former trustees" of the fund, i. e., the three union trustees whom they had succeeded and management trustees Bessell, Baker, and Bowen; that these persons were individually liable for the fund's losses; and that suit should be brought against them and other culpable parties to recover the losses.

At a meeting of the board of trustees of the fund on or about October 28, 1976, the union trustees formally moved that such a suit be filed. The management trustees, however, apparently including Bowen, voted to block the suit or at least to table the motion. At the next meeting of the board on November 22, 1976, consensus obtained that the vote of the previous meeting deadlocked the motion, and the trustees proceeded to select an arbitrator and to submit the

issue to arbitration pursuant to the Agreement and Declaration of Trust governing the fund. The cost of the arbitration exceeded $35,000 and plaintiffs contend that defendants were advised that the cost of arbitrating whether to file the suit or not would probably exceed the cost of the suit itself. Plaintiffs also allege that defendants Phagan and Beck made no independent investigation regarding the merits of the suit before deciding to block it and even refused to look at evidence offered to them by labor-appointed co-counsel for the fund, Marvin Kurzban. Phagan and Beck, however, maintain that they asked Kurzban to present the evidence to them in an open meeting (i. e., in Bowen's presence) but that he insisted on their coming to his office to see it, which they refused to do.

After extensive proceedings, the arbitrator, Jason Berkman, concluded that the board should indeed file suit against the former trustees and another individual with whom those trustees had dealt, and in his decision delivered on August 27, 1977, he directed the board to bring such an action. At a board meeting convened on September 2, 1977, the union trustees moved that a suit be filed against the persons designated by the arbitrator for "fraud, conspiracy, negligence, nonfeasance, malfeasance, misfeasance, breach of fiduciary duty and/or malpractice." The management trustees, however, refused to approve such a suit, in part, they assert, because they did not think charges of fraud or conspiracy were authorized by the arbitrator's decision. Thereupon co-counsel Kurzban, over the objection of co-counsel representing the management trustees, wrote to the arbitrator requesting clarification of his decision. The arbitrator responded that his opinion did "not limit the type of action to be filed by the present Board of Trustees" and that the proper scope of the suit should be left to the trial court. The management trustees still refused to permit a suit against the former trustees that alleged any willful misconduct, even though, according to plaintiffs,

1. The third union trustee who assumed office in January 1975 was Bill Hadden. Howard Jones replaced Hadden as a trustee in December 1977

and was subsequently substituted for him as a plaintiff in the present litigation.

they were advised that inclusion of such a charge would not materially affect the cost of the suit.

As a result, the union trustees and Local No. 272 itself commenced the present action against the management trustees, requesting (1) enforcement of the arbitrator's decision to file suit against the former trustees, (2) removal of Bowen, Phagan, and Beck as trustees of the three fringe benefit funds because of various breaches of fiduciary duties, (3) assessment of compensatory and punitive damages against the three management trustees for the breaches of fiduciary duties that precipitated the costly arbitration proceedings, and (4) recovery of attorneys' fees and costs for the present litigation.

The district court found, first, that the "arbitrator's decision was not restricted in the type or form of suit to be brought (including allegations amounting to 'willful misconduct')" but rather left the proper scope of the suit to be determined by the judge who tried the case. On the basis of this finding, the court ordered the trustees to file suit against the former trustees within 30 days.[2] The court also removed Bowen as a trustee of the three fringe benefit funds "until all proceedings relating to said suit are completed," but the court made clear that it did so only "to avoid the appearance of impropriety and the foreseeably and unforeseeably deleterious harm which may flow therefrom" and not because of any misconduct on Bowen's part. The court declined to remove Phagan and Beck, however, because it did not find that they had "breached their fiduciary duties in deadlocking the board and in refusing to include 'willful misconduct' in the proposed suit." The court also denied damages for

the cost of the arbitration on the ground that the management trustees had not "acted in bad faith in deadlocking the board." Finally, the court summarily denied plaintiffs' claim for attorneys' fees and costs.

Plaintiffs have appealed both the court's finding that defendants are not liable for the cost of arbitration and its refusal to award attorneys' fees. Defendant Bowen has filed a cross appeal challenging the jurisdiction of the district court, his removal as a trustee of the fringe benefit funds, and the enforcement of the arbitrator's decision.

Although we do not necessarily disagree with any of the actions of the district court recounted above, we must nevertheless remand the case to it because of our inability to discern from the court's opinion the factual or legal basis upon which it predicated some of those actions.

## I. Jurisdiction

The district court found jurisdiction under section 302(e) of the LMRA, 29 U.S.C. § 186(e), and sections 404 and 406(b)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1106(b)(2). Cross-appellant Bowen, however, challenges both assertions of jurisdiction.

Insofar as Bowen objects to jurisdiction under section 302(e) to remove trustees of a jointly administered trust fund or to assess damages against them for breaches of fiduciary duties, his objection is well taken. Section 302(e) confers jurisdiction on district courts "to restrain violations of this section." Even if breaches of fiduciary duties per se constitute violations of section 302,[3] we held in *Snider v. All State Admin-*

---

2. The court also found that Bowen was a "former trustee" in the context of the arbitrator's decision and thus should be a defendant in the suit.

3. Section 302 generally prohibits employers from making payments or loans to labor organizations or their officers, but section 302(c)(3) provides an exception for payments to trust funds established for the "sole and exclusive benefit" of employees and administered by equal numbers of employer and employee rep-

resentatives if the funds are organized and operated within a variety of other statutory restrictions. Although we have not specifically addressed the issue and do not do so here, the weight of authority seems to be that only structural deficiencies in a plan that defeat the "sole and exclusive benefit" provision of section 302(c)(5), and not simple breaches of fiduciary duty, violate that provision. *See, e. g., Lugo v. Employees Retirement Fund of the Illumination Products Industry*, 529 F.2d 251, 255 (2d Cir.),

*istrators, Inc.*, 481 F.2d 387, 390 (5th Cir. 1973), *cert. denied*, 415 U.S. 957, 94 S.Ct. 1484, 39 L.Ed.2d 571 (1974), that jurisdiction under section 302(e) "is limited to restraining future violations of the statute and does not include granting relief by way of . . removal of defalcating trustees or administrators." In *Mobile Mechanical Contractors Association v. Carlough*, 566 F.2d 1213, 1218–19 (5th Cir. 1977), moreover, we reiterated that section 302(e) jurisdiction is limited to remedies for future violations, and we specifically held that it does not comprehend claims for damages.[4]

▮ Without doubt, however, the district court had jurisdiction under ERISA to consider pleas for both removal and damages based on claims of fiduciary misconduct. There is no dispute that the annuity fund is an "employee benefit plan" under ERISA section 3(1), (3), 29 U.S.C. § 1002(1), (3); and therefore, by virtue of sections 4 and 401, 29 U.S.C. §§ 1003, 1101, is subject to ERISA's fiduciary responsibility provisions, sections 401–414, 29 U.S.C. §§ 1101–1114. Among the provisions prescribing conduct for ERISA fiduciaries are the two cited by the court below. Remedies for fiduciary misconduct are set forth in section 409(a), 29 U.S.C. § 1109(a):

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter [ERISA §§ 2–514, 29 U.S.C. §§ 1001–1144] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

Thus, plaintiffs' claim for damages from, and removal of, trustees who have allegedly breached their fiduciary duties arises under section 409(a). Section 502(a), 29 U.S.C. § 1132(a), then provides that "[a] civil action may be brought—. . . (2) by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section [409, 29 U.S.C. §] 1109." [5] And section 502(e), 29 U.S.C. § 1132(e), ordains that federal district courts shall have exclusive jurisdiction of such actions.

The same sections of ERISA also conferred jurisdiction on the lower court to enforce the arbitrator's decree. Among the duties that ERISA imposes on fiduciaries is the imperative of section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter." The Agreement and Declaration of Trust governing the annuity fund, which provides for the appointment of an arbitrator in the event of a deadlock among the trustees, requires the trustees to be bound by the decision of the arbitrator.[6] Thus, the claim that the

---

*cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); *Bowers v. Moreno*, 520 F.2d 843, 845–46 (1st Cir. 1975); *Alvares v. Erickson*, 514 F.2d 156, 165 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); Hutchinson, *The Federal Prudent Man Rule under ERISA*, 22 Vill.L.Rev. 15, 18–19 (1976).

4. *Cf. Nedd v. United Mine Workers of America*, 556 F.2d 190, 200–06 (3d Cir. 1977) (§ 302 may provide a basis for implying a damage remedy), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978).

5. There is neither dispute nor doubt that both plaintiff and defendant trustees are "fiduciaries" under ERISA section 3(21), 29 U.S.C. § 1002(21). *See Freund v. Marshall & Ilsley*

*Bank*, 485 F.Supp. 629, 634–35 (W.D.Wis. 1979). It is not immediately apparent, however, that Local 272 is either a "participant," a "beneficiary," or a "fiduciary" within the meaning of subsections (7), (8) and (21), respectively, of section 3 and hence that the union has standing as a plaintiff under section 502(a). But since this issue was not raised by the parties and since it has no apparent bearing on our disposition of the case, we will not pursue the matter further.

6. [Section] 6.7 In the event of a deadlock among the Trustees of any of the affairs of this Trust, an impartial empire [sic] to decide the matter in dispute shall be appointed by consent of all of the Trustees, and if the Trustees have not selected an impartial um-

trustees refused to comply with the arbitrator's decree alleged a breach of section 404(a)(1)(D), and since, under section 409, *supra*, a fiduciary who violates such a mandate "shall be subject to such other equitable or remedial relief as the court may deem appropriate," the court had jurisdiction under section 502(a), (e) to order the trustees to comply with the arbitrator's decree.[7]

## II. Trustees' Liability for Damages

Plaintiffs appeal the district court's finding that the management trustees are not liable for damages on the ground that the court applied an incorrect legal standard in appraising the trustees' behavior.

The fiduciary provisions of ERISA that govern at least most of plaintiffs' allegations are—in addition to section 404(a)(1)(D), *supra*—section 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B):

(a)(1) Subject to sections [403(c), (d), 4042, and 4044, 29 U.S.C. §§] 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

and section 406(b)(2), 29 U.S.C. § 1106(b)(2):

(b) A fiduciary with respect to a plan shall not—

.    .    .    .    .

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries .    .    ..

Sections 404(a)(1)(A) and 406(b)(2), among others, thus impose duties of loyalty on fiduciaries, while section 404(a)(1)(B) imposes a duty of care.[8]

The court assessed no damages for the cost of the arbitration proceeding because it found insufficient evidence that the management trustees had "acted in bad faith in deadlocking the board." Plaintiffs contend, correctly, that "bad faith" is not the appropriate standard under ERISA. The court, however, asserted jurisdiction under sections 404 and 406(b)(2), the relevant fiduciary standards under ERISA, and, in deciding the issue of the trustees' removal, it found that Phagan and Beck had not "breached their fiduciary duties" and that Bowen had not engaged in "any miscon-

pire who has signified his acceptance within ten days after the deadlock arose, any one or more of the Trustees may petition the United States District Court for the district in which the principal trust office is located for the appointment of an impartial referee to decide such dispute.

The decision of the impartial empire [sic] shall be in writing and if within the scope and intent of this Trust Agreement shall be binding upon all parties hereto, the Trustees, employers, employees and beneficiaries.

7. Plaintiffs argue that the court had pendent jurisdiction to enforce the arbitrator's decision pursuant to a Florida statute, while defendant Bowen contends that, since there was no federal jurisdiction at all, plaintiffs' sole remedy lay under Florida law. Plaintiffs also urge us to consider Florida statutory and case law governing fiduciary conduct. For the parties' edifica-

tion, we refer them to section 514(a) of ERISA, 29 U.S.C. § 1144(a), which provides that, with exceptions not relevant here, "the provisions of this subchapter .  .  . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section [4(a), 29 U.S.C. §] 1003(a) of this title and not exempt under section [4(b), 29 U.S.C. §] 1003(b)." Thus, we have serious reservations whether Florida law has any application in this case and hence whether pendent jurisdiction can obtain.

8. *See* Hutchinson, *The Federal Prudent Man Rule under ERISA*, 22 Vill.L.Rev. 15, 31, 39–42 (1976). The allegations against Beck and Phagan encompass transgressions of both types of duties, while those against Bowen are principally confined to the former variety.

duct." If these latter findings were made in light of the ERISA standards, they would support the court's decision not to award damages even though that decision itself was reached via a bad faith standard.

■ We cannot clearly discern, however, whether in finding no breaches of fiduciary duty or misconduct the court applied the standards of section 404 and 406(b)(2), upon which it based jurisdiction, or the standard of bad faith, which it invoked in deciding the damage issue. The court gave no explication of its use of the terms "bad faith," "fiduciary duty," and "misconduct," and it gave no explanation for any of the conclusions it reached in which it used these terms. Because of our uncertainty regarding the grounds for its decision,[9] we must remand the case for the district court to redetermine the issue of the trustees' liability for damages.

Also unclear from the court's opinion is whether it found as a fact that Bowen actively participated in the decision whether to sue the former trustees, who included Bowen himself, and indeed voted to block the suit. Although the record strongly suggests that he did so, the court specifically found only that the management trustees deadlocked the board. Since only two votes are required to deadlock the board, this finding does not necessarily imply that Bowen voted.

■ If Bowen in fact did vote not to sue himself or did actively participate in the decisionmaking process, we would hold as a matter of law that he violated both sections 404(a)(1) and 406(b)(2). Section 404(a)(1) and subsection (A) require a fiduciary to act "solely in the interest of the participants and beneficiaries" of a plan and "for the exclusive purpose" of providing them benefits at a reasonable cost. We do not believe that one who, in his capacity as a trustee, attempts to prevent a trust from suing him for substantial damages can reasonably be said to do so "solely in the interest" of or "for the exclusive purpose" of benefitting others. Section 406(b)(2), moreover, forbids a fiduciary to "act in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interest of the plan." Since we regard "[acting] on behalf of a party" to encompass acting on behalf of oneself[10] and since we consider a desire not to be sued by a plan to be an interest "adverse" to that of the plan, we would hold that active participation in a decision whether to bring suit against oneself that is directed toward thwarting such a suit constitutes a violation of the statute. On remand, therefore, the court should address itself to the factual issue of the extent of Bowen's participation in the board's decisionmaking process.[11]

9. Our uncertainty is heightened by the court's enforcement of the arbitrator's decision since that action is an implicit finding that the management trustees should have complied with the arbitrator's direction as provided in the fund's Agreement and Declaration Trust, *see* n.6, *supra*, and accompanying text, and since the failure to comply with the agreement is a breach of section 404(a)(1)(D) of ERISA, a fiduciary duty. In finding that Phagan and Beck had not "breached their fiduciary duties," therefore, the court may well not have been applying the ERISA standards.

Although the court's decision not to remove Phagan and Beck as trustees is not before us for review, *see* section III, *infra,* we note that such a violation of section 404(a)(1)(D) need not warrant removal of a trustee under section 409(a) if the trustee had sufficiently genuine doubts about the validity or meaning of the arbitrator's decision; simply ordering him to comply with the decision may be an adequate remedy.

10. *See Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 637 (W.D.Wis. 1979) (section 406(b) generally prohibits "any fiduciary from acting in a situation in which he has a personal interest which may conflict with the interest of the plan for which he acts"); *Marshall v. Kelly*, 465 F.Supp. 341 (W.D.Okla. 1978) (a fiduciary of a plan who arranges loans or other payments to himself from the plan that are not covered by a statutory exemption violates section 406(b)(2)); Weiler, *Fiduciary Provisions of the Employee Retirement Income Security Act of 1974*, 36 La.L.Rev. 897, 916 (1976) ("The import of [section 406(b)(2)] is to prevent a plan fiduciary from being placed in a position where he would have dual loyalties and allegiances.") (footnote omitted).

11. We note that should the court on remand find that Bowen breached his fiduciary duties but that Phagan and Beck did not, the court will have to decide whether Bowen is liable for the cost of the arbitration proceedings in light

### III. Removal of Trustees

The court declined to remove Phagan and Beck because it found that they had not breached their fiduciary duties, but it did remove Bowen "to avoid the appearance of impropriety." Since the judgment below, Phagan and Beck have resigned as trustees, and thus plaintiffs have not appealed the court's decision not to remove them. Bowen, however, appeals his removal.

Plaintiffs argue that Bowen's appeal is moot. Since his removal, the collective bargaining agreement between Local 272 and SOEA, the employer association of which Bowen was president, has expired, and the union has signed a new agreement with a different employer association—the Coastal Ironworkers Subcontractors Association ("CISA")—of which Bowen is not a member. Under the terms of the agreement, CISA appoints the management trustees of the union fringe benefit funds, and under the bylaws of CISA an employer must be a member of CISA to be eligible for appointment. Plaintiffs argue that, since Bowen is ineligible to be a trustee, he cannot be reinstated as one, and therefore his appeal of his removal is moot.

■ We agree that, under present circumstances, Bowen could not be reinstated as a trustee, but we do not consider his appeal to be moot. Under the terms of the district court's order, Bowen is barred from serving as a trustee of the union funds until the suit against him and the other former trustees has been completely resolved. Given the current congestion of court dockets and the typical tenacity of litigators, we would not want to predict that that controversy will soon be resolved.[12] Bowen, moreover, can apparently join CISA at any time and thus become eligible for appointment as a trustee when a vacancy on the board arises. We must conclude, therefore, that the issue of whether Bowen should continue to be subject to the legal disability imposed on him by the court is not one "that cannot

affect the rights of litigants in the case before" us, *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971), or in which "the parties lack a legally cognizable interest in the outcome," *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). *Cf. Sibron v. New York*, 392 U.S. 40, 51–58, 88 S.Ct. 1889, 1896–1900, 20 L.Ed.2d 917 (1968) (challenge to criminal conviction not moot even though sentence has expired because conviction itself may entail collateral legal consequences); *Connell v. Shoemaker*, 555 F.2d 483 (5th Cir. 1977) (propriety of Army's blacklisting, without a hearing, of plaintiff's rental property on grounds of racial discrimination not moot even though Army has removed the sanction because imputation of bigotry may hurt plaintiff's business and reputation in the community). We therefore reach the merits of Bowen's appeal.

Bowen protests his removal as trustee of all three fringe benefit funds. If he was properly removed as trustee of the annuity fund, however, the court had discretion under section 409(a), *supra*, to remove him from the others as well. Section 409(a) authorizes such "equitable or remedial relief that the court may deem appropriate, including removal of [a] fiduciary." This clause provides "courts with broad remedies for redressing the interests of participants and beneficiaries when they have been adversely affected by breaches of fiduciary duty." *Eaves v. Penn*, 587 F.2d 453, 462 (10th Cir. 1978); *see Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir. 1978). Since all three plans cover the same group of employees, the court could reasonably consider it "appropriate" to the interest of the participants and beneficiaries of the three plans that a person who had not served them faithfully in one fiduciary capacity not represent them in any such capacity.

While the broad remedial powers conferred by section 409(a) thus authorized the

---

of the fact that only two votes are required to deadlock and thus compel arbitration.

**12.** As of oral argument in the present case, the suit against the former trustees in state court had not yet reached trial, even though it had been filed over two years previously.

particular remedy chosen by the court, that section, read literally, predicates the exercise of those remedial powers on a finding that the individual against whom the remedy is levied has violated a fiduciary duty. In the present case, however, the court removed Bowen simply "to avoid the appearance of impropriety" and not because of "any misconduct." We are thus presented with the question whether a court has power beyond the literal mandate of section 409(a) to take action against a fiduciary to further what appears to be the best interests of those whom the fiduciary serves.

■ We have concluded that it would be imprudent for us to address this question at the present time. The issue is one of first impression, not only in this circuit but apparently in all others as well. The question itself, moreover, is a difficult one. On the one hand, Congress, in drafting very extensive and detailed standards of conduct for ERISA fiduciaries, in providing the courts with broad remedial powers to redress violations of those standards, and in preempting applicable state trust law,[13] may have intended that the statute be the exclusive vehicle for regulating fiduciary conduct [14] and, in particular, that a statutory violation be a prerequisite for invoking the statutory remedies provided for such violations. On the other hand, Congress, in drafting a remedial statute, may have intended it to be liberally construed to carry out its purposes [15] and, in creating a uniform federal fiduciary duty law, may have intended to incorporate therein traditional common law trust principles.[16] While the issue present-

ed is thus both novel and substantial, the parties did not address it at all in their briefs, and we are loath to decide so important a question without benefit of the fruits of the adversary process unless it is necessary for us to do so. Here we are remanding the issue of damages to the district court and, in deciding that issue, the court will decide whether Bowen breached any of his statutory fiduciary duties. If it finds that he did, his removal can clearly stand. If it finds that he did not, it can then decide whether his removal was nevertheless permissible under ERISA,[17] and we will review that decision if called upon to do so.

### IV. Enforcement of the Arbitrator's Decision

■ In addition to challenging the lower court's jurisdiction to enforce the arbitrator's order to bring suit against the former trustees, which we have upheld, Bowen raises three other discernable objections to the enforcement of the order. We find them all without merit.

First, Bowen argues that the court erred in construing ambiguities in the arbitrator's decision. The court found as facts both that the arbitrator's decision did not limit the type of charges to be brought against the former trustees and that Bowen was one of the former trustees and was therefore to be sued along with the others. Bowen cites *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division*, 481 F.2d 821, 825 (5th Cir. 1973), for the proposition that a court should not itself

13. See n.7, *supra*.

14. See *Eaves v. Penn*, 587 F.2d 453, 457 (10th Cir. 1978) (section 404(a) embodies "a carefully tailored law of trusts").

15. See *Marshall v. Kelly*, 465 F.Supp. at 349 ("Like other legislation with remedial objectives, ERISA should be given a broad construction in order to carry out its purposes of protecting the interests of Plan participants and beneficiaries and preserving the integrity of Plan assets.").

16. See *Eaves v. Penn*, 587 F.2d 453, 462 (10th Cir. 1978) ("In developing a law of remedies, the Congress intended the federal courts to

draw on principles of traditional trust law") (quotation from legislative history omitted).

17. We have held the court lacked jurisdiction under section 302(e) of the LMRA to remove a trustee on grounds of past behavior because that provision only authorizes prevention of future violations of section 302. See nn.3–4, *supra*, and accompanying text. That holding does not necessarily imply that a court could not remove a trustee to avoid future impropriety or even the appearance of it. But we again note the question, which we again do not decide, whether a breach of fiduciary duty per se constitutes a violation of § 302. See n.3, *supra*.

**1264**

resolve ambiguities in an arbitrator's award but rather should, in the "normal course," remand to the arbitrator for clarification. In the present case, however, the arbitrator not only wrote a letter to the trustees upon request clarifying his decision, but he himself testified at the trial, and the court simply interpreted the purported ambiguities in the decision to comport with what the arbitrator said he meant. We thus conclude, as did the panel in *San Antonio Light,* which also accepted a district court's adoption of an arbitrator's subsequent clarification, that to remand "in this case . . would be a pointless gesture." *Id.* at 825.

Accompanying Bowen's argument that the court should have remanded to the arbitrator for clarification is the wholly inconsistent contention that the arbitrator lacked the authority to clarify his decision. Bowen cites *Citizens Bldg. v. Western Union Telegraph Co.,* 120 F.2d 982, 984 (5th Cir. 1941), for its statement that once "an arbitral board renders a final award, its powers and duties under the submission are terminated," and "it is powerless to modify or revoke [its final decision] or to make a new award upon the same issues." In the present case, however, the arbitrator did not alter his decision at all; he merely explained what he did and did not mean by it. And if such an explanation is necessary, the arbitrator is ordinarily *required* to provide it. *San Antonio Light, supra; United Steelworkers of America v. W. C. Bradley Co.,* 551 F.2d 72, 73 (5th Cir. 1977).

Finally, relying on *Refinery Employees Union v. Continental Oil Co.,* 268 F.2d 447, 451 (5th Cir.), *cert. denied,* 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959), which acknowledged that an arbitrator can only decide issues submitted to him, Bowen argues that the arbitrator's clarification went beyond the scope of the issues he was asked to resolve. *Refinery Employees* also holds,

however, that determining just what issues were submitted to an arbitrator is a task for the court.[18] *Id.* at 452. And here the court found that among the issues submitted to arbitrator Berkman was "[w]hether under the facts and circumstances in the above-styled matter, the present Board of Trustees should file suit against all or any of the former Board of Trustees in their individual capacities." Since this finding was one of fact, we can disturb it only if it is clearly erroneous. Fed.R.Civ.P. 52(a). Given the evidence in the record, including the fact that the court's phrasing of the issue was identical to that used by the arbitrator in prefacing his decision on the issue, we cannot say that the court's finding was erroneous at all. And given the arbitrator's decision on the issue, which was that "[t]he present Board of Trustees are directed to file suit against all the former members of the Board of Trustees in their individual capacities," we cannot say that the arbitrator strayed from the matter before him when he warranted that by "suit" he did not mean to exclude any particular charges and that by "all the former members" he did mean to include Bowen.

### V. Attorneys' Fees

Plaintiffs appeal the court's denial of attorneys' fees and costs under section 502(g) of ERISA, 29 U.S.C. § 1132(g), which provides that: "In any action under this subchapter by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

While section 502(g) on its face gives the district court discretion with regard to attorneys' fees, plaintiffs argue that section 502(g) should be construed analogously to section 204(b) of Title II of the Civil Rights

---

**18.** We note that *General Warehousemen & Helpers Local 767 v. Standard Brands, Inc.,* 560 F.2d 700, 707–08 n.8 (5th Cir.), *rev'd en banc on other grounds,* 579 F.2d 1282 (1978), *cert. denied,* 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed. 877 (1979) (citing *United Steel Workers of America v. United States Gypsum Co.,* 492 F.2d 713, 732 (5th Cir.), *cert. denied,* 419 U.S. 998,

95 S.Ct. 312, 42 L.Ed.2d 271 (1974)), suggests that "disputes over the scope of a submission are themselves to be resolved by the arbitrator." But since in this case the court's construction of the issue submitted was precisely the same as the arbitrator's, we need not resolve whether the court's or the arbitrator's version would prevail if they differed.

Act of 1964, 42 U.S.C. § 2000a–3(b),[19] which is similarly worded and which the Supreme Court has interpreted to require the awarding of attorneys' fees to plaintiffs as a matter of course "unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Plaintiffs also point to *Northcross v. Board of Education*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973), which construed section 718 of the Emergency School Aid Act of 1972, 20 U.S.C. § 1617,[20] identically to section 204(b).

■ *Northcross*, however, convinces us that plaintiffs' analogy is unsound. The Court in *Northcross* based its decision on two grounds. First, it recognized that "[t]he similarity of language in § 718 and § 204(b) is . . . a strong indication that the two statutes should be interpreted *pari passu.*" *Id.* at 428, 93 S.Ct. at 2202. But second, and principally,[21] the Court relied on the fact that

> "the two provisions share a common *raison d'etre.* The plaintiffs in school cases are 'private attorneys general' vindicating national policy in the same sense as are plaintiffs in Title II actions. The enactment of both provisions was for the same purpose—'to encourage individuals injured by racial discrimination to seek judicial relief . . . .' " *Johnson v. Combs*, 471 F.2d 84, 86 (C.A. 5 1972), quoting *Newman v. Piggie Park Enterprises, Inc., supra*, 390 U.S., at 402, 88 S.Ct., at 966.

*Id.* Thus, there are two manifest distinctions between section 718 and 204(b), on the one hand, and section 502(g) of ERISA on the other. First, both of the former two provisions were designed to promote the eradication of (nonreverse) racial discrimination, "a policy that Congress considered of the highest priority." *Piggie Park*, 390 U.S. at 402, 88 S.Ct. at 966. The policies underlying ERISA are certainly important ones, but they simply do not rise to the level of assuring that all citizens are accorded their civil rights. Not only are the policies that section 502(g) is designed to enforce less compelling than those furthered by sections 718 and 204(b), but the need for attorneys' fees as an enforcement incentive is less under ERISA than the two civil rights statutes. Plaintiffs suing under the latter statutes are "private attorneys general" in the sense that they seek injunctive relief to vindicate important public rights. If such "plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Piggie Park*, 390 U.S. at 402, 88 S.Ct. at 966. Plaintiffs under Title I of ERISA may be seeking injunctive relief for the benefit of all the participants and beneficiaries of a particular plan, but they may also be seeking damages on behalf of their plan or simply the recovery of benefits from the plan that are due them alone.[22] Fiduciaries, moreover, may have a statutory obligation to bring ERISA suits.[23] Thus, incentives in the form of attorneys' fees are, on

19. "In any action commenced pursuant to this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person."

20. Upon the entry of a final order by the court of the United States against a local educational agency, a State (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of title VI of the Civil Rights Act of 1964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

21. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978).

22. *See, e. g.*, ERISA, § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

23. *See* n.26, *infra*, and accompanying text.

the whole, less necessary to insure that the statute is enforced.[24]

While we fail to find in ERISA the compelling circumstances that have led the Supreme Court to construe discretionary attorneys' fees provisions as virtually mandatory, we nevertheless must remand the issue of attorneys' fees in the present case. We have two reasons for doing so.

The first is simply that we are remanding on the merits, and different decisions on the merits may warrant a revised decision on attorneys' fees. The second is that the district court gave no reasons at all to justify its denial of attorneys' fees to plaintiffs. While section 502(g) gives that court discretion with regard to awarding such fees, we are charged with reviewing its decision for abuse of discretion, and it is very difficult for us to do so without benefit of the lower court's reasons for deciding as it did.

■ We think that it would be helpful for district courts to have some guidelines to assist them in exercising their discretion, *and we are certain that it would be helpful for us if the courts justified their decisions in terms of such guidelines.* In deciding whether to award attorneys' fees to a party

under section 502(g), therefore, a court should consider such factors as the following: (1) the degree of the opposing parties' culpability or bad faith;[25] (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *See Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir. 1978); *Baeten v. Van Ess,* 474 F.Supp. 1324 (E.D.Wis. 1979). No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g).

In particular types of cases, or in any individual case, however, other considerations may be relevant as well. Where *plaintiffs are fiduciaries, for example, as in* the present case, a court should consider whether those parties would have violated their fiduciary duties by not bringing suit.[26]

---

**24.** In *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975), the Court extended the *Piggie Park* construction of § 204(b) of Title II of the Civil Rights Act of 1964 to the attorney's fee provision of Title VII, 42 U.S.C. § 2000e–5(k), because of "an equally strong public interest in having *injunctive* actions brought under Title VII, *to eradicate discriminatory* employment practices." (emphasis added). While Title VII, like ERISA, does afford monetary relief, it, unlike ERISA, is quintessentially a civil rights law. *Cf. Morrow v. Dillard,* 580 F.2d 1284, 1300 (5th Cir. 1978) (applying *Piggie Park* construction to Civil Rights Attorney's Fee Act of 1976, 42 U.S.C. § 1988).

In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Court decided that the *Piggie Park* standard for awarding attorneys' fees to prevailing plaintiffs under Title VII does not apply to prevailing defendants. One of the Court's reasons was that a Title VII "plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" *Id.* at 418, 98 S.Ct. at 699 (quoting *Piggie Park,* 390 U.S. at 402, 88 S.Ct. at 966). If we were to apply the *Piggie Park* construction to section 502(g) of ERISA, as appellants urge us to do,

we would presumably be obliged to adopt the *Christiansburg Garment* bifurcation between prevailing plaintiffs and defendants as well. However, not only is the above rationale of *Christiansburg Garment* inapposite to ERISA, but section 502(g), unlike the attorneys' fees provisions of Title II, Title VII, and the Emergency School Aid Act, does not even, on its face, require that the party awarded attorneys' fees be a prevailing one.

**25.** There is an allegation in the record that the defendants knew that any suit against the former trustees that did not include charges of fraud or willful misconduct would be futile because the trustees, under applicable law, would be personally liable *only for such misconduct;* judgments secured against them on the other *grounds would be paid by the fund.* If this allegation is true, it might well be an indicium of bad faith on the part of defendants in precipitating the present suit and thus might augur in favor of allowing plaintiffs to recover their reasonable expenditures in bringing the suit.

**26.** The union trustees contend that they would have violated, for example, section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3), had they not

If they would have, and if they themselves, as is the case here, are bearing the costs of the suit, that would cut in favor of an award of attorneys' fees. That the fiduciaries rather than the plan are financing the suit, however, may indicate that their duties did not require them to bring the suit.

Since the court below must reexamine its decisions regarding the management trustees' liability for damages, the propriety of Bowen's removal, and the awarding of attorneys' fees, the case is

REMANDED.

sued their management counterparts. That section provides that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

. . . . .

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.