**Karrie SPRENKLE, Plaintiff,**

v.

**HARTFORD LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 3:98–CV–87.**

United States District Court,
N.D. West Virginia,
Martinsburg Division.

Feb. 15, 2000.

Eric S. Black, Trump & Trump, Berkeley Springs, WV, for plaintiff.

Charles E. Hurt, Charleston, WV, Philip F. Brown, Todd A. Brenner, Brenner, Brown, Golian & McCaffrey Co., LPA, Columbus, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

On this day, the above styled matter came before the Court for consideration of the following motions: (1) Plaintiff Karrie L. Sprenkle's motion for summary judgment against the Hartford Life Insurance Company (Document No. 21); (2) the defendant's motion for summary judgment (Document No. 22); and (3) the defendant's motion to strike exhibits 2, 3, 4, 5 and 7 which were attached to plaintiff's motion for summary judgment (Document No. 26). After reviewing the memoranda of law and considering oral argument presented by the parties, the Court finds that the plaintiff's motion for summary judgment should be granted, that the defendant's motion for summary judgment should be denied, and that the defendant's motion to strike exhibits should be denied as being moot.

## I. FACTS

In 1998, Karrie Sprenkle (Sprenkle) was an employee of Berryville Graphics, an affiliate of Bertelsmann, Incorporated (Bertelsmann). During the course of Sprenkle's employment, The Hartford Life Insurance Company (Hartford) issued a Group Insurance Policy to Bertelsmann and its affiliates, carrying an effective date of January 1, 1993. The named policyholder was Bertelsmann.

The Group Policy provides short and long term disability insurance to covered employees who are unable to perform their job activities. The Policy specifically states:

"If, while covered under this Benefit, you become totally and continuously disabled because of:

(1) injury;

(2) sickness; or

(3) pregnancy,

The Hartford will pay a Weekly Disability Benefit."

Sprenkle was hospitalized on June 8, 1998, by her obstetrician/gynecologist, Dr. Brown, as a result of complications associated with her pregnancy. Her hospitalization ended on June 9, 1998.

As a result of Sprenkle's prior pregnancy complications and her then existing medical condition, Dr. Brown considered her pregnancy to be "high-risk." He ordered that she refrain from engaging in any type of employment.

Dr. Brown based his decision to order Sprenkle off work in part on a previous pregnancy she had in 1996–1997. During this prior pregnancy, Sprenkle suffered severe complications, including a Trisomy 13 [1] infant and severe pre-eclampsia [2]. This resulted in the performance of a caesarian section on January 15, 1997. The caesarian birth occurred several weeks before her projected delivery date.

Sprenkle's son died several hours after his birth on January 15, 1997, as a result of the medical condition known as Trisomy 13. Sprenkle's experience with this earlier pregnancy, coupled with her complications in 1998, led Dr. Brown to declare her unable to perform any type of work as of June 8, 1998.

Because of her doctor's orders, Sprenkle filed a claim for the disability benefit provided by her Group Insurance Policy. She completed the forms based on instructions from her employer, Berryville Graphics. The instruction form received from her employer indicated that her disability payment would be equivalent to ninety percent (90%) of her normal weekly salary. Berryville Graphics also completed the appropriate section of the Initial Statement of Claim Form (ISC Form), indicating that Mrs. Sprenkle's rate of pay was $12.98 per hour.

Dr. Brown completed the attending physician's statement on June 30, 1998. In his statement, Dr. Brown listed Sprenkle's complications as anxiety, weight loss, pregnancy, and previous Trisomy 13. He also indicated that Sprenkle's disability was the result of her current pregnancy. Finally, Dr. Brown listed June 8, 1998, as the date Sprenkle became totally disabled. He further indicated that he did not expect a fundamental or marked change in the future.

Dr. Brown provided additional documentation to Hartford indicating Sprenkle's inability to engage in the substantial duties of her work. On August 4, 1998, Dr. Brown forwarded two letters to Hartford. One letter specifically stated that Sprenkle was a high risk patient because of a previous history of delivering a Trisomy 13 infant at 24 weeks. Additionally, Dr. Brown provided information about her history of severe pre-eclampsia. Also, Brown stated that Sprenkle was of an advanced maternal age. On the same date, Dr. Brown sent Hartford a second letter indicating that, due to her medical conditions, Sprenkle should remain off work until further notice.

Although having all of the above evidence, Hartford denied Sprenkle's claim for short-term disability benefits by letter dated September 5, 1998. The letter summarily denied her disability benefits based upon the conclusory statement that the evidence in support of her claim did not establish that she was unable to perform the material and substantial duties of her occupation. In accordance with the provisions set forth in the denial letter, counsel for Sprenkle sent a letter of representation to Hartford requesting an appeal of the initial decision made in her case. No further action was taken on Sprenkle's request for an appeal of the initial decision denying her benefits until this action was filed.

## II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

1. A congenital disorder due to trisomy [the occurrence of three of a given chromosome rather than the normal diploid number of two] of the number 13 chromosome. The disorder is characterized by the infant's failure to thrive, severe mental retardation, and other anomalies. BLAKISTON'S GOULD MEDICAL DICTIONARY 1405 (4TH 1979).

2. A toxemia occurring in the latter half of pregnancy, characterized by an acute elevation of blood pressure and usually by edema (swelling) and proteinuria (presence of protein in urine.) BLAKISTON'S GOULD MEDICAL DICTIONARY 1092 (4TH 1979).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.*, Rule 56 itself "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. *See also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979) (holding that "summary judgment 'should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'") (citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950)).

In *Celotex*, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Memorial Hosp.*, 912 F.2d 73, 78 (4th Cir.1990), *superseded on rehearing*, 945 F.2d 696 (4th Cir.1991). Additionally, "[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the

motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## III. DISCUSSION OF LAW

Both parties agree that plaintiff's claim relates to an employee benefit plan as defined by the Employee Retirement Income Security Act (ERISA). Therefore, this action is governed solely by ERISA.

### A. STANDARD OF REVIEW

■ Coverage decisions made by administrators of ERISA plans are subject to *de novo* review. *Bedrick v. Travelers Insurance Co.*, 93 F.3d 149, 152 (4th Cir.1996); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). On the other hand, if the plan grants discretionary authority in claims decisions to the administrator, an abuse of discretion standard is to be applied. *Id.* at 152, 109 S.Ct. 948; see also *Firestone*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80; *de Nobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir.1989).

In this case, Hartford had full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the insurance policy. This was explicitly set forth in the insurance policy. Therefore, the inquiry must be taken another step.

■ Two types of ERISA plans for health coverage exist: (1) employer-funded plans where the insurance company acts merely as a processor and independent fiduciary administrator of the plan, and (2) insurer-funded plans where the insurer processes and pays the claims while administering the plans. *Bedrick*, 93 F.3d at 152. This is done in exchange for a premium from the employer. *Id.* at 152. Where a case fits into the second category, "the law is highly suspect of 'fiduciaries' having a personal interest in the subject of their trust." *Id.* at 152. When this is the case, "the 'abuse of discretion' standard is

not applied in as deferential a manner to such plans." *Id.* at 152 (citing *Firestone,* 489 U.S. at 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).

The inquiry is extended even further:

[w]hen a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

*Bailey v. Blue Cross & Blue Shield of Virginia,* 67 F.3d 53, 56 (4th Cir.1995)(citing *Doe v. Group Hospitalization & Medical Services,* 3 F.3d 80, 87 (4th Cir.1993)). This less deferential standard has been referred to as the modified abuse of discretion standard. See *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 232–33 (4th Cir.1997).

In this case, Hartford assumes the dual role. It administers the plan as well as receives an economic rise or fall based upon claims decisions. This is not to say that all of Hartford's decisions on claims are in some way tainted and are to be given no weight. However, this means that the Court must take full account of this conflict of interest and decide the case accordingly.

## B. SPRENKLE'S CLAIM FOR DISABILITY.

■ From a review of the evidence, the Court concludes that Hartford abused its discretion by denying Sprenkle's claim for short term disability benefits under the group insurance policy. The Group Insurance Policy issued by the Hartford states:

If while covered under this Benefit, you become totally and continuously disabled because of:

(1) injury;

(2) sickness; or

(3) pregnancy;

The Hartford will pay a Weekly Disability Benefit. No benefit, however, will be payable for any day on which you are not under the care of a Physician.

Totally Disabled means that you are unable to do the material and substantial duties of your occupation.

The policy further defined other terms associated with weekly disability benefit coverage. Regarding sickness, the Policy states:

Sickness vs. Accident A disability shall be deemed to be caused by sickness, and not by accident if:

(1) It is caused or contributed to by:

(a) any condition, disease or disorder of the body or mind; or

(b) any infection, except as a pus-forming infection of an accidental cut or wound; or

(c) hernia of any type; or

(d) any disease of the heart; or

(e) any medical treatment for items (a) through (d) above; or

(2) it is caused or contributed to by pregnancy, complications of pregnancy or medical treatment for pregnancy.

The documentary evidence, included in the administrative record, reveals that Sprenkle was disabled under the terms and conditions of the insurance policy. This documentary evidence consisted of Dr. Brown's prenatal flow record and progress notes, Hartford's Weekly Disability ISC Form, and two letters written by Dr. Brown.

The prenatal flow record did not provide a great deal of information regarding Sprenkle's claim. However, the chart noted weight loss between May 18 and June 8, 1998.[3]

---

**3.** Sprenkle's due date was December 10, 1998.

The next piece of documentary evidence was the ISC Form. The form was filed by the plaintiff and executed by a Berryville Graphics representative on July 8, 1998. Part 1 included various personal information of the plaintiff. It also stated that her illness began on June 8, 1998.

Part 2 contained the employer representative information. It stated, *inter alia,* that Sprenkle's coverage began in 1989. The form contained Sprenkle's rate of pay and hours worked. The form also stated that Sprenkle was expected to return to work on July 30, 1998.

Part 3 of the ISC Form was the attending physician's statement signed by Dr. Brown. The form stated that the diagnosis description was pregnancy. It stated that the disability was the result of pregnancy. Dr. Brown listed complications as: "anxiety, weight loss—pregnancy—Prev. Trisomy 13." Further, the ISC Form stated that Sprenkle was hospitalized on June 8, 1998 and discharged on June 9, 1998. The form stated that Sprenkle became disabled on June 8, 1998 from her job as well as any other job. Dr. Brown also noted that Sprenkle would be able to resume work on a part time basis on July 30, 1998.

The next documents were two letters written by Dr. Brown. Apparently the letters were transmitted to Hartford, as they were included in the administrative record. Both letters were dated August 4, 1998. The first letter stated that Dr. Brown had seen Sprenkle in his office for medical care. Due to her medical condition, he recommended that she remain off work until further notice.

The second letter stated that Sprenkle was a 35–year old gravida 1, pre-term delivery 1, at 19 weeks gestation who was receiving prenatal care by Dr. Brown. It also stated that Sprenkle was a high risk patient due to previous history of delivering a trisomy 13 infant at 24 weeks. Further, Dr. Brown stated that she had a history of severe pre-eclampsia with a previous delivery. Next, Dr. Brown provided that Sprenkle's risk factors were: 1) ad-vanced maternal age, and 2) previous history of trisomy 13 delivery; history of pre-eclampsia. Finally, Dr. Brown stated that he would be happy to provide any additional information if needed.

In its memorandum of law, Hartford argues that the decision to deny Sprenkle's claim was reasonable because there was a lack of any evidence in the file to support her alleged disability. Further, Hartford argues that Dr. Brown was certifying the disability based on past history of pregnancy complications, not due to problems associated with the pregnancy at issue in this case. Also, Hartford asserts that Sprenkle did not provide any evidence that she was incapable of performing the substantial and material duties of her regular occupation as expressly required by the terms of the plan.

Hartford's assessments are simply not accurate. First, Dr. Brown did provide evidence of complications in the pregnancy at issue in this case. Dr. Brown certified that Sprenkle was suffering weight loss and anxiety. Also, Dr. Brown considered these symptoms so severe that Sprenkle was hospitalized on June 8, 1998. While it is true that Dr. Brown classified Sprenkle's pregnancy as high risk due to previous complications, evidence of immediate complications did exist for the 1998 pregnancy.

Second, Dr. Brown did make the finding that Sprenkle should cease working. He made this finding on a temporary basis until July 30, 1998, as a result of the June 8 hospitalization. On August 4, 1998, Dr. Brown found reason for Sprenkle to continue to stay home from work as evidenced by his two letters transmitted to Hartford.

Hartford argues that Dr. Brown only "recommended" that Sprenkle not work and did not possess the opinion that she could not perform her duties at work. A medical doctor's opinion that a person should not work means, simply stated, that the person should not work. While Dr. Brown could have been more detailed in his opinion, it is clear that he intended that

Sprenkle remain away from her employment during the pregnancy.

Considering the deference to be accorded to Hartford's decision, the Court finds under the facts of this case that Hartford abused its discretion by denying Sprenkle's claim for weekly disability benefits. Further, the Court finds that Sprenkle is entitled to judgment as a matter of law.

The Court also finds that Sprenkle is entitled to ninety percent (90%) of her weekly earnings over the maximum payment period of twenty-six (26) weeks. Sprenkle's rate of pay was twelve dollars and ninety-eight cents ($12.98) per hour.[4] Her weekly earnings for a forty hour week would be five hundred nineteen dollars and twenty cents ($519.20). Her maximum weekly benefits would be ninety percent (90%) of the weekly earnings, which is four hundred sixty-seven dollars and twenty-eight cents ($467.28). The amount Sprenkle is entitled to as a matter of law would be the maximum weekly benefits for a twenty-six (26) week period. However, counsel for the plaintiff asserted in his motion and stated at oral argument that Sprenkle was entitled to $11,682.00 due to amounts actually paid by Hartford to Sprenkle.[5]

## C. HARTFORD'S CLAIMS OF CONVERSION AND UNJUST ENRICHMENT

The Court finds that Hartford is not entitled to judgment as a matter of law on its claims of conversion and unjust enrichment. However, in light of the Court's ruling on Sprenkle's claim for disabilities, the Court finds that Hartford is entitled to a partial return of the nineteen thousand seven hundred twenty-four dollars and sixteen cents ($19,724.16) which was paid to the plaintiff. This would be eight thousand forty-two dollars and sixteen cents ($8,042.16) reflecting the set-off of $11,682.00. Inasmuch as the Court finds that Sprenkle was entitled to disability benefits,

she has neither converted the amount nor been the subject of unjust enrichment.

## D. ATTORNEY FEES, COSTS, PRE-JUDGMENT INTEREST, AND POST-JUDGMENT INTEREST

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee . . ." 29 U.S.C. § 1132(g). In light of this statute, "ERISA places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court." *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1028 (4th Cir.1993). Accordingly, the plaintiff requested costs and reasonable attorney's fees in the amended complaint.

■ The Fourth Circuit has adopted five factors for consideration when assessing the attorney's fees issue:

1. degree of opposing parties' culpability or bad faith;

2. ability of opposing parties to satisfy an award of attorneys' fees;

3. whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

4. whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

5. the relative merits of the parties' positions.

*Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210, 1217–18 (4th Cir.1990)(citing *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980)). These factors are not exclusive, but provide general guidelines for the Court in considering a petition for attorney's fees. *Quesinberry,* 987 F.2d at 1029. Further,

---

4. Per the July 1998 ISC Form.

5. Apparently Sprenkle was paid disability benefits for the period after the birth of Sprenkle's child.

[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address....

In particular types of cases, or in any individual case, however, other considerations may be relevant as well.

*Id.* at 1029 (citing *Bowen*, 624 F.2d at 1266). Furthermore, "the foremost principle ... of attorneys' fees awards under ERISA is the discretion the statute grants to the district court." *Id.* at 1029.

■ The first factor on this issue is bad faith. In this case, any bad faith on the part of Hartford is not readily apparent. The Court notes that while Hartford had information to support the disability, it was not abundant. Likewise, Hartford's decision to deny the claim cannot be classified as being in bad faith.

The second factor in the attorney's fees determination is Hartford's ability to pay. Taking into account Hartford's general reputation and standing in the insurance business, it is clear that it could afford to pay attorney's fees in a case such as this with a relatively small judgment.

The third factor is deterrence. An award of attorney's fees in this case would deter other companies from denying claims when there is available and overlooked evidence of disability. While this was not a high dollar case, actions such as this one are commonplace. Further, a great number of ERISA cases involve low dollar amounts. Considering the cumulative effect of decisions in the instant dollar range, insurance carriers should consider this judgment in assessing claims for disability.

The fourth point is whether the prevailing plaintiff sought to benefit all participants or beneficiaries in an ERISA plan or to resolve a significant legal question involving ERISA. The instant case does not fall within this category. The legal and factual issues involved were not complex. Also, this claim involved Sprenkle's disability under the plan rather than any legal defect in the plan itself.

The fifth issue is the relative merits of the parties' positions. As the Court has concluded, Sprenkle was entitled to benefits under the plan as a matter of law. Further, the appropriate deference was given to Hartford's decision to deny the claim. Therefore, the Court finds that Sprenkle's case had sufficient strength on its merits to warrant an award of attorney's fees.

The five aforementioned factors do not end the Court's inquiry on the issue. The Court may also consider other factors in the determination. The Court notes that Sprenkle complied with the claims procedures provided in the policy. She complied with and provided all relevant claim information in a timely fashion. Further, Dr. Brown complied with the Hartford's requests and offered to help in the event further information was needed.

Since Sprenkle has favorable results in three of the five *Reinking* factors and acted diligently under the claims provision, the Court exercising its discretion finds that an award of attorney's fees is appropriate. However, the Court needs further information in order to assess what would be a reasonable fee in this action. In accordance with Fed.R.Civ.P. 54(d)(2) counsel for the plaintiff is directed to file a fee petition with the Court and service upon defendant's counsel no later than fourteen (14) days after entry of judgment. Defendant's counsel is directed to respond to the petition within fourteen (14) days of receipt thereof.

In addition to attorney's fees, 29 U.S.C. § 1132(g)(1) allows the Court discretion to award costs. Based upon the reasoning pertaining to attorney's fees, the Court finds an award of costs to be appropriate in this action.

■ Further, "ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court." *Quesinberry*, 987 F.2d at 1030 (citations omitted). Also,

"the federal post-judgment interest statute, 28 U.S.C. § 1961 (1988), is applicable in ERISA cases." *Id.* at 1031 (citations omitted). Since plaintiff's counsel deposited the $19,724.16 check into an escrow account, the Court will not award pre-judgment interest or post-judgment interest.

#### E. DEFENDANT'S MOTION TO STRIKE EXHIBITS 2, 3, 4, 5 AND 7.

The defendant in its memorandum contra to plaintiff's motion for summary judgment (Document No. 26) moved to strike plaintiff's exhibits 2, 3, 4, 5, and 7. The defendant argues that these exhibits attached to plaintiff's motion for summary judgment are not evidence since they were not submitted to the claims administrator. The Court notes that Hartford did not respond to the plaintiff's request for an administrative hearing before filing this action. However, the Court only relied on those documents contained in the administrative file and did not consider the above stated exhibits. Accordingly, the motions will be denied as moot.

### IV. CONCLUSION

Based upon the foregoing, the Court finds that judgment in this action should be entered in favor of the plaintiff.

It is, therefore, **ORDERED**:

1. That plaintiff Karrie L. Sprenkle's motion for summary judgment against the Hartford Life Insurance Company (Document No. 21) is **GRANTED**;

2. That the defendant's motion for summary judgment (Document No. 22) is **DENIED**;

3. That the defendant's motion to strike exhibits 2, 3, 4, 5 and 7 which were attached to plaintiff's motion for summary judgment (Document No. 26) is **DENIED** as being moot;

4. That judgment is **GRANTED** in favor of the plaintiff in the amount of $11,682.00;

5. That, providing for a set-off, counsel for plaintiff return the amount of $8,042.16 from the defendant's check which was placed into an escrow account;

6. That plaintiff's counsel file an attorney's fees petition with the Court and service upon defendant's counsel within fourteen (14) days of entry of judgment;

7. That defendant's counsel respond to the petition within fourteen (14) days of receipt thereof;

8. That the plaintiff is awarded costs;

The Clerk is directed to transmit a true copy of this Order to counsel of record herein.