**James DAVIS and Gloria Davis, Appellants in the district court—Appellees before the Court of Appeals,**

v.

**CHICAGO MUNICIPAL EMPLOYEES CREDIT UNION, Appellees in the district court—Appellants before the Court of Appeals.**

**No. 88–3166.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1989.

Decided Dec. 12, 1989.

Linda Spak (argued), Spak & Associates, Chicago, Ill., for plaintiffs-appellees.

Edward L. Janski (argued), Frederick Heiss (argued), Chicago, Ill., for defendants-appellants.

Before COFFEY and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

James and Gloria Davis filed a joint petition for bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* In the bankruptcy proceeding they filed an adversarial complaint against the Chicago Municipal Employees Credit Union ("CMECU") charging that a security interest held by CMECU in James Davis's contingent pension refunds was invalid. The complaint attacked the security interest by asserting its invalidity in the face of Illinois Revised Statute ch. 108½, para. 8–244. Subsequent briefs and memoranda of law also asserted that the security interest was repugnant to the declared policy of the Employee Retirement Income Security Act ("ERISA"), as embodied in 29 U.S.C. §§ 1001 & 1056(d)(1). The bankruptcy judge found the security interest valid and granted judgment in favor of CMECU.

The Davises appealed to the district court. In a written memorandum and order dated May 20, 1988, the court reversed the bankruptcy judge. In the course of its memorandum it noted that James Davis was an employee of the city of Chicago and a member of the Municipal Employees Benefit Fund of Chicago (the "Fund"), a retirement and disability fund. It also noted

that to obtain a loan Davis assigned to CMECU any refund due him from the Fund, such a refund being payable should Davis leave the city's employment before a certain date. In construing the assignment the court looked for guidance to the Illinois statutes' chapter 108½—the chapter that governs the administration of municipal pension funds, of which the Fund was one. After a thorough and detailed analysis the court concluded that chapter 108½'s paragraph 8–244, which prohibits the assignment of any "annuity or disability benefit," applied in the case, and, consequently, that the CMECU security interest in Davis's pension refunds was invalid. At the end of its memorandum, the court, in dictum, stated that its conclusion was "consistent with policy considerations expressed by Congress in enacting [ERISA]" and quoted an excerpt of ERISA legislative history. But the court never discussed any specific ERISA provision and never found ERISA violated in any way.

The Davises' attorney later filed a petition for attorney's fees and costs pursuant to ERISA section 1132(g)(1). A hearing was held on the petition in which CMECU pointed out that the court's decision of May 20 was based on state law, not on ERISA, and that, in any case, the pension plan in which Davis had membership was a "governmental plan" under 29 U.S.C. § 1002(32) and was exempt from ERISA's attorney's fees provision by way of 29 U.S.C. § 1003(b). The Davises' counsel resisted these arguments, as the following exchange shows.

THE COURT: What is your response, Counsel?

COUNSEL: The response is that there was a finding of the Court in its memorandum opinion that there is a violation of [ERISA] by the action that [CMECU] took in having that assignment made; and because there was a violation of [ERISA], we petitioned under the [ERISA] section where it states that in any action under this title the Court in its discretion may allow a reasonable attorney's fees and costs to either party.

Taking counsel's gross mischaracterization of its earlier findings for the truth, the court responded that "to be consistent with the Court's earlier position that there was a violation of [ERISA]" it should rule that the Davises could move for attorney's fees under section 1132(g)(1), "and to be consistent with the position" earlier taken it would award fees to them. The court later ordered CMECU to pay the Davises' attorney's fees in the amount of $3,825 and costs in the amount of $147.20. CMECU has appealed that portion of the order relating to the fees.

■ The issue here is whether the district court erred when it ordered CMECU to pay attorney's fees pursuant to section 1132(g)(1), which states that "[i]n any action under this subchapter [of ERISA] ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The section is one of 132 fee-shifting statutes currently in existence, see The D.C. Circuit Review—Attorney's Fees, 57 Geo.Wash.L.Rev. 1122, 1124 n. 15 (1989), statutes that tend away from the historic "pay your own way" standard known as the American Rule. See generally Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). A decision to shift fees under the section is discretionary. Marquardt v. North Am. Car Corp., 652 F.2d 715, 717 (7th Cir.1981). We have tempered that discretion, however, by reading section 1132(g)(1) in conformity with other fee shifting statutes. Thus, as with 42 U.S.C. § 1988, one asking for a fee shift must be a prevailing party. See Rootberg v. Central States, S.E. & S.W. Areas Pension Fund, 856 F.2d 796, 798–99 (7th Cir.1988). And, as with 28 U.S.C. § 2412(d), no fees will shift if "the [losing party's] position [is] substantially justified or ... special circumstances [would] make an award unjust." Bittner v. Sadoff & Rudoy Indus., 728 F.2d 820, 830 (7th Cir.1984). See also Free v. Briody, 793 F.2d 807, 809 (7th Cir.1986).

■ Here we need not agitate about whether the fee shift was proper under section 1132(g)(1) for we fall far short of reaching that statute. Before attorney's fees may be shifted pursuant to the section there must be an action brought under

ERISA. If there was no such action then there is no basis for invoking section 1132(g)(1) and an award pursuant to that section is without basis in law, pure and simple. In this case the Davises' complaint alleges nothing more than a violation of Illinois Revised Statute ch. 108½, para. 8–244. This clearly does not make their suit an "action under [ERISA]." And the claim in their briefs that the "declared policy" of ERISA was undermined cannot transform their action into one based on that Act. An ERISA "action" requires something more than a state law claim and a tangential vinculum with national labor policy. Moreover, the court's memorandum includes nothing indicating a violation of ERISA despite appellants' attempt to stretch the court's "consistency" dictum into such an indication. Plainly put, a complaint and a decision resting exclusively on state law, with mere hints to ERISA policy, provides a passageway far too narrow for one to reach section 1132(g)(1). The necessary predicate of an ERISA action was absent in this case. Consequently, the district court erred by ordering CMECU to pay the Davises' attorney's fees.

For this reason, the district court's judgment as to the allowance of fees must be REVERSED.