Juan RODRIGUEZ, Maria A. Rodriguez,
Plaintiffs–Appellants,

v.

MEBA PENSION TRUST, Lucille Hart,
Administrator, Defendants–Appellees.
(Two Cases)

Nos. 91–2336, 91–2358.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 1, 1991.

Decided Feb. 10, 1992.

Albert David Brault, Brault, Graham, Scott & Brault, Rockville, Md., argued (M. Kathleen Parker, Brault, Graham, Scott & Brault, Rockville, Md., Amy Loeserman Klein, Barbara J. Stob, Klein & Bagileo, Washington, D.C., on brief), for plaintiffs-appellants.

Laura H. Hamilton, Dickstein, Shapiro & Morin, Washington, D.C., argued (Angelo V. Arcadipane, Joseph E. Kolick, Jr., Laura A. Vikander, Marcus C. Migliore, on brief), for defendants-appellees.

Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.

## OPINION

PHILLIPS, Circuit Judge:

Juan Rodriguez appeals the district court's denial of his application for attorney's fees pursuant to § 502(g)(1) of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* In Rodriguez's earlier action for pension benefits against the Maritime Engineer Benefi-cial Association (MEBA), we found him entitled to an award of benefits. *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69 (4th Cir.1989) (*Rodriguez I*). Rodriguez then applied in the district court for attorney's fees, and the district court denied the application. The district court ruled without the benefit of briefing or argument on the recent decision of this court in *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210 (4th Cir.1990). Because we believe *Reinking* tips the balance in favor of Rodriguez, we vacate and remand with directions to award him fees in an appropriate amount.

### I

Rodriguez retired from his employment as a marine engineer in 1965, whereupon he received a monthly pension of $300 stemming from negotiations between MEBA and his former employer. In 1967, he began working as a port engineer for Sea–Land Services, Inc. At first, his position was non-unionized, but, in June of 1968, Sea–Land entered into a collective bargaining agreement with MEBA which covered Rodriguez's position. Rodriguez wrote a letter to I.A. Lamy, Vice President of MEBA and Trustee of MEBA trust, notifying Lamy that Rodriguez was drawing a pension as a retired marine engineer and asking Lamy how this affected his "present status in the organization." Lamy told Rodriguez that he must apply for reinstatement to union membership but that "membership will not interfere with your pension."

Approximately six weeks later, on October 16, 1968, the MEBA Pension Trust Regulations were amended to afford persons in Rodriguez's position "the option of suspending their pension checks and accruing further benefits or continuing to receive pension checks but foregoing further accruals." This option was deemed so important that MEBA Vice Presidents personally delivered copies of the option to each port engineer affected, explained it to them, and received their written decisions. However, no copy of the option was delivered to Rodriguez, and Lamy never wrote

Rodriguez to correct his earlier statements. In August of 1972, Rodriguez wrote Mildred Killough, then MEBA trust administrator, requesting clarification of his status with the trust. She responded in March of 1973 that he could have elected to suspend his pension benefits under the 1968 option, but since he elected to continue to receive benefits, he could accrue no further credits.

Rodriguez did not question his right to exercise the option at any time during the next twelve years. However, MEBA's records indicate that the trust knew or should have known Rodriguez had not filed a written determination on the option, and trust administrators made no attempt to contact him. In 1975 and 1976, the trust reached agreement with three port engineers in Rodriguez's position. Trust administrators allowed these three to exercise their options contingent upon the return of all pension benefits they had received. Two of the three, like Rodriguez, had never received notice of the option. The other had decided against exercising his option previously, but he was permitted to change his mind.

On January 25, 1985, upon contemplating retirement, Rodriguez wrote the trust administrator to request information about receiving a lump sum payment of his benefits. He was told such a payment was unavailable because of his failure to suspend pension payments under the 1968 option. Rodriguez asked for a formal review of the denial of benefits. MEBA reviewed Rodriguez's case three times and denied benefits on each occasion. In 1989, we ruled in *Rodriguez I* that the MEBA trust had breached its fiduciary duty by failing, in 1968 and 1973, to notify Rodriguez of his option to suspend benefits. The parties ultimately settled for a pension benefit of $225,194.89, but they could not agree on attorneys' fees.

Rodriguez applied for a fee award of $627,647.98 for legal services rendered through May 14, 1990. In a brief Memorandum and Order, the district court applied the five-factor ERISA attorney's fees test that had been adopted by this court in *Tenneco, Inc. v. First Virginia Bank of Tidewater*, No. 82–1158, 4 E.B.C. 1344 (4th Cir. Apr. 5, 1983) (per curiam) (unpublished),[1] and ruled that Rodriguez was not entitled to receive attorneys' fees. This appeal followed.

## II

■ Section 502(g)(1) of ERISA provides:

> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). The *Tenneco* test circumscribes a district court's discretion to award fees by directing consideration of five factors in determining the propriety of making a particular award:

(1) The degree of the opposing party's culpability or bad faith;

(2) The ability of the opposing party to satisfy an award of attorney's fees;

(3) Whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances;

(4) Whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA Plan or sought to resolve a significant legal question regarding ERISA; and

(5) The relative merits of the parties' positions.

*Tenneco*, slip op. at 4, 4 E.B.C. at 1345. Applying this test to the instant case, the district court found that factors two and

---

**1.** The *Tenneco* panel expressly adopted the test as earlier formulated by the Fifth Circuit in *Iron Workers Local #272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980). Technically, as an unpublished opinion of this court, *Tenneco* did not establish circuit precedent under our Internal Operating Procedure 36.4–.6, so was not authoritative on the point at the time of the district court's decision. Whatever awkwardness that

may have created for our review of the district court's decision relying upon *Tenneco* has been removed, however, by the intervening express adoption of the test from *Bowen* by our published opinion in *Reinking*.

Despite this technical problem, for convenience we refer to the five-factor test applied by the district court as the *Tenneco* test.

five favored Rodriguez, factors three and four favored MEBA, and factor one favored neither party. Faced with an apparent "tie" between the parties, the district court rejected the fee application.

*Reinking,* decided by this court since *Tenneco,* expressly adopted the five-factor test from *Bowen,* but with a twist not expressed in *Tenneco,* hence not taken into account by the district court in its application of the *Tenneco* test.

Specifically, the *Reinking* court, considering an application by an ERISA plan participant for attorneys fees, adopted the view now held by three other circuits [2] that while the five-factor test should be used "as a guide, ... [the district court] must also bear in mind the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts." *Reinking,* 910 F.2d at 1218. Looking to these remedial purposes, as found in ERISA's preamble, 29 U.S.C. § 1001(b), and key portions of ERISA's legislative history, *see* H.R.Rep. No. 93–807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4639, 4670, the court held that "in order to effectuate the remedial purposes of ERISA, a prevailing individual beneficiary should ordinarily recover attorney's fees unless special circumstances would render such an award unjust." *Reinking,* 910 F.2d at 1218.[3]

*Reinking* thus effectively mandated a presumption favoring prevailing ERISA plaintiffs which the district court, presumably unaware of the recent case, failed to take into account. As applied in this case, it requires a re-assessment of the fee award application under the five-factor test that is more disposed toward an award of fees. In particular, it requires a re-evaluation of factors one (defendant's culpability), two (defendant's ability to pay), and three (likely deterrent effect of an award) in ways more favorable to the fee applicant than the district court thought proper.

We take these in order.[4]

**2.** *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 590 (9th Cir.1984); *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1356 (8th Cir. 1980); *Iron Workers Local # 272 v. Bowen,* 624 F.2d 1255, 1265 (5th Cir.1980).

**3.** This is a flat holding in *Reinking,* and under this circuit's long-standing, formal practice, is considered binding upon all panels of this court until overruled by an en banc decision of this court or a decision of the Supreme Court. *See Capital Produce Co. v. United States,* 930 F.2d 1077, 1079 (4th Cir.1991). Neither has occurred here. The dissent, however, proceeds as if we are free in this case to disregard this critical direction in *Reinking* for evaluating benefit-claimants' attorney fee applications under § 1132(g)(1) of ERISA. It mentions *Reinking* only to suggest in a footnote that as to one of the *Tenneco* factors it might be distinguished on its facts, op. at 475, n. 2; but its principal burden is that there is no warrant, as *Reinking* flatly holds for an ingoing presumption in favor of § 1132(g)(1) fee-claimants who have prevailed on the merits. That may be a permissible interpretation of its ERISA fee-shifting provision, as the dissent asserts some other courts have held, but it is not the interpretation now binding on this court, nor followed by some other courts of appeals. The dissent's unacknowledged quarrel is with *Reinking* and its entire burden a *sub rosa* attack upon that decision.

Furthermore, in furthering that *sub rosa* attack, it misstates in various ways the implications of our recognition of *Reinking's* authority.

Contrary to the dissent's ominous characterizations, we do not—by drawing on *Reinking*—somehow convert § 1132(g)(1) into a "prevailing party" feeshifting provision "analogous to" 42 U.S.C. § 1988. Op. at 474. We simply hold—applying *Reinking*—that although § 1132(g)(1) literally allows fee awards to either party without regard to loss or success on the merits, a prevailing benefit-claimant ordinarily should receive such an award. This does not go as far as have some courts which seemingly have indeed interpreted § 1132(g)(1) as implying that the discretion it confers does not run both ways, but only in favor of prevailing parties. *See, e.g., Davis v. Chicago Municipal Employees' Credit Union,* 891 F.2d 182, 184 (7th Cir.1989). Neither do we hold—drawing on *Reinking*—that district court discretion *not* to award attorney fees to a prevailing claimant is so severely constrained as the dissent asserts. We simply hold that the *Tenneco/Reinking* test—which in plain terms does *not* import the judicially-developed § 1988 test but is specifically adapted to ERISA benefit claims—was erroneously applied here because of a misapprehension of its legal import as refined in the intervening decision in *Reinking.*

**4.** The district court's fee award decision is one ultimately committed to its informed discretion. As earlier indicated, however, that discretion has been effectively constrained by the judicially imposed five-factor test which operates as a legal limit on the exercise of discretion. Our review, therefore while technically for "abuse of

## A

The district court ruled that neither party was favored by the first factor, MEBA's culpability or bad faith. In doing so, the lower court relied on language from *Rodriguez I* that MEBA's error was merely a "mistake," and indicated that it thought bad faith was necessary to tip the scale in claimant's favor on this factor.

Assessed more carefully and with *Reinking*'s general presumption favoring prevailing claimant in mind, we believe that this fact should be considered to favor Rodriguez rather than being a neutral factor. It is true that in *Rodriguez I* we characterized the initial failure to notify as merely a mistake; but we characterized the continuing treatment of Rodriguez's inquiries over the next twelve years as a breach of fiduciary duty. *See Rodriguez I*, 872 F.2d at 74. Such a breach of duty, even if it does not amount to bad faith, surely constitutes "culpability" within contemplation of the five-factor test. *Cf. Werner v. Upjohn Co.*, 628 F.2d 848, 856–57 (4th Cir.1980) ("culpable conduct" defined as something "more than negligence"; as "blamable" or "wrong" conduct, but not necessarily conduct involving "malice or guilty purpose").

Assessed in light of *Reinking*'s general presumption, we believe MEBA's overall conduct in dealing with Rodriguez's inquiries and claims must be assessed as sufficiently "culpable" to tip factor one in Rodriguez's favor.

## B

Although the district court thought that factor two (opposing party's ability to pay) favored Rodriguez, recognizing that MEBA was able to satisfy a fee award, we believe the court underrated its force as properly assessed under *Reinking*. For, as noted in the Ninth Circuit decision upon which *Reinking* principally relied, "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorneys' fees from the defendant." *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 590 (9th Cir.1984); *see also Reinking*, 910 F.2d at 1218 (noting that denying fees to a beneficiary who prevails against a large plan would "significantly undermine the ability of potential beneficiaries to protect their rights in federal court").

The district court obviously gave this factor no such near-dispositive force in its assessment. Under *Reinking*, it should be given that force in the absence of special circumstances, a matter to which we will turn at the end of our re-evaluation of the *Tenneco* factors.

## C

The district court considered that factor three (the deterrent effect of an award) did not favor the claimant here. In the first place, the court again relied on its perception that MEBA's conduct only represented an unavoidable "mistake" not amenable to deterrence. Based on this, the court opined that this court's finding of liability in *Rodriguez I*, in conjunction with the notice provisions of ERISA should prove to be sufficient deterrence.

We earlier have noted the error in the court's belief that our decision in *Rodriguez I* had established as the law of the case that MEBA's conduct overall reflected nothing more than mistake. With this premise undercut, the court's conclusion that mere mistakes of this sort are not amenable to deterrence obviously falls. Where, as here, the degree of culpability was such as to constitute a breach of fiduciary duty, as was concluded in *Rodriguez I*, it is obvious that monetary sanctions may well operate to deter repetitions of the conduct. *See Reinking*, 910 F.2d at 1218.

discretion" only, may find "abuse" (or more properly, an erroneous exercise of discretion) in failure, whether by mistake or unawareness, to observe the legal constraints which "inform" the proper exercise of discretion in the matter. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, ——, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990) (legal errors affecting exercises of discretion may be treated as abuses of discretion by reviewing court); *United Food & Commercial Workers v. Marval Poultry*, 876 F.2d 346, 350–51 (4th Cir.1989) (review of discretionary decision may include *de novo* review for legal error affecting exercise of discretion).

We therefore conclude that the district court simply erred in ruling that the deterrence factor did not favor Rodriguez.

## D

■ Properly assessed in light of *Reinking*'s general presumption in favor of prevailing plaintiffs in these cases, only factor four of the *Tenneco* test (whether the claimant's action was brought primarily for his own benefit) favors MEBA. With the overall balance of factors so heavily struck in Rodriguez's favor, there remains only the question, recognized as integral to the test in both *Tenneco* and *Reinking*, whether "special circumstances" may nevertheless make an otherwise indicated award of fees unjust. No such special circumstances are suggested here, and we conclude that, accordingly, the district court erred in denying any award.

That leaves the question of the appropriate amount of the award, an issue of course not addressed by the district court, but one that should be determined by that court in the first instance.

## III

For the above reasons, we vacate the judgment of the district court denying Rodriguez's application for attorney fees, and remand the cause to the district court with instructions to award attorney fees in an amount determined by that court to be proper under the totality of circumstances. In remanding, we express no opinion as to the proper amount, whether that requested by Rodriguez or some other.

VACATED AND REMANDED WITH INSTRUCTIONS.

WILKINSON, Circuit Judge, dissenting:

The ERISA fees provision at issue in this case explicitly leaves the decision whether to award attorneys' fees to the discretion of the district court. 29 U.S.C. § 1132(g)(1). The majority, however, discards the statute's discretionary standard and "mandates" its own "presumption," which automatically transfers plan assets to attorneys for prevailing plaintiffs. In so doing, the majority creates a framework for ERISA fee shifting analogous to 42 U.S.C. § 1988. The majority fails to acknowledge the circuit split that it deepens with this decision, and makes no attempt to reconcile the substantial differences between § 1988 and the ERISA fees provision. While mandated fee shifting may be a sound idea, it is not the standard that Congress has adopted in ERISA, and I respectfully dissent from its adoption by the court.

I am troubled also by the practical consequences that will flow from the majority's policy choice. Since, as the majority appears to acknowledge, the attorneys' fees will be paid from pension plan assets, the real losers from the result here will be the plan's intended beneficiaries. Indeed, the very prospect of automatic fee shifting in favor of prevailing plaintiffs (but not prevailing defendants) is likely to create many more lawsuits under ERISA and cause many more trust assets to be consumed in litigation costs.[1]

## I.

The majority works a fundamental transformation of the statutory grant of discretion. The statutory language is clear: "In any action under this subchapter ... the court *in its discretion may* allow a reasonable attorney's fee and costs of action to *either party.*" 29 U.S.C. § 1132(g)(1) (emphasis added). Until now, courts have interpreted this language to mean what it says, leaving the decision whether to award fees to either party within the sound discretion of the trial court. *See Sweet v. Consolidated Aluminum Corp.,* 913 F.2d 268, 271 (6th Cir.1990); *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 828 (7th Cir.1984); *Hummell v. S.E. Rykoff & Co.,*

---

1. The amount sought here was substantial. Plaintiffs' fee application—for services rendered through May 14, 1990—was for $627,647.98, which represented a lodestar fee of $277,938, a contingency multiplier of 100%, a quality of representation enhancement of 20%, and costs of $16,184.38. Thus, the amount requested was already almost three times the amount of pension benefits due to plaintiffs from the underlying lawsuit.

634 F.2d 446, 452 (9th Cir.1980). Under this regime, district courts will award attorneys' fees in some instances and deny them in others, depending upon the facts and circumstances of the case. Now, however, the majority discovers a different meaning in the statute. So long as the defendant has enough money, § 1132(g)(1) is re-written as follows: "In any action under this subchapter, the court *must* allow a reasonable attorney's fee and costs of action to *prevailing plaintiffs*." Although the majority attempts to reassure us in a footnote that the decision whether to award fees is ultimately committed to the "informed discretion" of the district court, the analysis employed throughout effectively reduces the district court's discretionary function in deciding whether to award fees to a rubber stamp of applications by prevailing plaintiffs.

### A.

Under the guise of "re-evaluating" the factors outlined in *Tenneco, Inc. v. First Virginia Bank of Tidewater*, No. 82–1158, 4 E.B.C. 1344 (4th Cir. Apr. 5, 1983) (per curiam), the majority transforms a case-by-case factual inquiry into an absolute appellate rule. In *Tenneco* this court outlined five factors for district courts to consider in exercising their discretion to award fees under ERISA. Under the majority's analysis, three of the five *Tenneco* factors now automatically direct fee shifting in favor of prevailing plaintiffs: the defendant's culpability or bad faith; whether a fee award would deter others acting under similar circumstances; and the relative merits of the parties' positions. First, under the majority's analysis, every prevailing plaintiff will automatically establish "culpability" on the part of the defendant. A plaintiff can prevail on an ERISA claim only if a defendant breached some legal duty, so that every successful ERISA action necessarily involves the same sort of "culpable conduct" that the majority finds here. Second, the majority ties the hands of the district courts on the factor of whether a fee award will deter future violations. Based on the economic truism that "monetary sanctions may well operate to deter repeti-

tions of the conduct," the majority concludes that the district court abused its discretion in finding that this factor favors the fund. Once again, the majority's analysis would favor fee shifting to *all* prevailing plaintiffs, because monetary sanctions will *always* have at least a marginal deterrent effect on the sanctioned behavior by increasing its expected cost. Third, the "relative merits" inquiry would also appear to favor automatic fee shifting to prevailing plaintiffs: the merits of the prevailing plaintiff's position are by definition superior to the merits of the losing defendant's position.

It understates the matter, therefore, when the majority acknowledges that it has "mandated a presumption favoring prevailing ERISA plaintiffs." With three of the five factors automatically favoring a fee award to a prevailing plaintiff, the majority's analysis would seem to render unnecessary any consideration of the specific facts and circumstances that counsel against fee shifting. As interpreted by the majority, the *Tenneco* factors no longer guide the district court in exercising its discretion under the statute; they predetermine its decision.

### B.

The majority finds another means of mandating fee awards in the "ability to pay" factor. It simply announces that an ERISA defendant's ability to pay is the decisive factor, requiring a fee award in the absence of "special circumstances." Little attempt is made to justify the newfound supremacy of this factor or to reconcile this approach with the five-factored inquiry that heretofore had guided the exercise of district court discretion in this and other circuits. The majority fails even to acknowledge the cases holding expressly that none of the five factors is dispositive in the decision whether to award a fee. *See Dixon v. Seafarers' Welfare Plan*, 878 F.2d 1411, 1412 (11th Cir.1989); *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 258 (1st Cir.1986); *Iron Workers Local*

---

*# 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980).

Instead, the majority proceeds to inquire whether there are any "special circumstances" that might justify a denial of fees in this case. Not surprisingly, it finds none. The relationship the majority's "special circumstances" test bears to any language in § 1132(g)(1) is never explored. Apparently, the majority would require an act of clairvoyance on the part of the district court, which could not possibly have guessed from anything in the statute that this circuit would adopt the "special circumstances" standard here applied. Rather than remanding, however, with instructions as to what might constitute "special circumstances," the majority simply reverses the district court's denial of fees. Finally abandoning all pretense of preserving any district court discretion on this issue, the majority determines that remand is unnecessary except, of course, to determine the precise amount of an award. Apparently, the combination of a prevailing plaintiff and a defendant plan with enough money to pay the attorneys' fees creates a presumption that would be impossible to rebut upon remand.[2]

## II.

In holding that prevailing plaintiffs are entitled to fees absent "special circumstances," the majority opinion imports into ERISA the 42 U.S.C. § 1988 standard applicable to suits brought under the post-Reconstruction civil rights laws. While the majority attempts to disclaim the standard for fee shifting under § 1988, it reverses the exercise of district court discretion on the basis of the identical language that courts have used to award fees under that provision. The majority denies on the one hand that it intends to "somehow convert § 1132(g)(1) into a 'prevailing party' fee-shifting provision 'analogous to' 42 U.S.C. § 1988." Op. at 471, n. 3. In the very next sentence, however, it candidly admits that it has undertaken just such a conversion: under its standard, "a prevailing benefit-claimant ordinarily should receive" a fee award. *Id.* There is no way the majority can obscure the fact that it has scrambled two very different statutes without any congressional warrant for doing so.

The Civil Rights Attorney's Fees Awards Act permits fee shifting for a "prevailing party, other than the United States." 42 U.S.C. § 1988. Courts have interpreted this provision to mandate fee shifting to prevailing plaintiffs except when special circumstances make such an award unjust. *E.g., Bills v. Hodges,* 628 F.2d 844, 847 (4th Cir.1980). Under this interpretation, the courts have recognized that fees are awarded "almost as a matter of course." *Gray,* 792 F.2d at 259 (contrasting § 1988

2. I do not read *Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210 (4th Cir.1990), to require the approach adopted by the majority. Nothing in *Reinking* suggests that a defendant's ability to pay should somehow be dispositive. Nor does *Reinking* in any way dictate the fundamental transformation of the *Tenneco* factors undertaken by the majority. Rather, in *Reinking* the court reaffirmed the discretionary nature of the ERISA standard by referring to the district court's findings on several of the five factors. 910 F.2d at 1218–19. *Reinking* thus reinforces the paramount role that district courts play in deciding whether to award fees. In its steadfast refusal to defer in any manner to the district court's discretion, the majority stands the analysis in *Reinking* on its head. The majority ignores the entire context in which the *Reinking* review took place, that of affirming a district court's findings and the exercise of its discretion rather than overturning it, as here. *Reinking* did not destroy the discretionary nature of this statute; the majority has.

The majority also ignores a critical difference between *Reinking* and this case. In *Reinking* the defendant was an insurance company, which the court found "could easily afford to satisfy an award." 910 F.2d at 1218. Here, however, the defendant is a non-profit labor-management trust, and it is agreed that any fee award will necessarily be paid out of plan assets. This distinction slants the analysis against a fee award under two of the *Tenneco* factors. First, when fee awards are paid "not out of the pockets of the people responsible for the denial of benefits ... but out of the plan assets themselves," the ability to pay factor favors a denial of fees. *Bittner,* 728 F.2d at 829. Second, the deterrent effect of an award is diminished if it is paid out of plan assets. *Id.* I believe that these factors adequately distinguish *Reinking,* and think that the district court was entitled to weigh them in exercising its discretion to deny the fee award in this case.

and ERISA); *Bittner*, 728 F.2d 820, 829 (7th Cir.1984) (same). In applying the § 1988 standard to ERISA, I believe the majority has made a policy choice that is inconsistent with the language and structure of the statute.

Two justifications have been offered for the virtually mandatory standard under § 1988. First, courts have cited the legislative history of § 1988, which contains express language revealing Congress's intent to shift fees to prevailing parties "unless special circumstances would render such an award unjust." *E.g., Bills*, 628 F.2d at 847 (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 4 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5912). Second, courts have noted that this standard is consistent with the "private attorney general" policy that underlies the civil rights statutes. *Bonnes v. Long*, 599 F.2d 1316, 1319 (4th Cir.1979); *Zarcone v. Perry*, 581 F.2d 1039, 1043 (2d Cir.1978).

Neither of these arguments applies to the ERISA provision at issue here. Nothing in the text or legislative history of ERISA provides any indication that Congress intended to graft the prevailing party presumption onto the statutory framework of ERISA. *See Bittner*, 728 F.2d at 829. To the contrary, the language and structure of the statute belie any such conclusion. The ERISA statute provides for mandatory fee-shifting *only* for those plaintiffs who prevail in actions brought to enforce § 1145 (setting forth obligation of employer to contribute to multiemployer plans). 29 U.S.C. § 1132(g)(2)(D). In those suits, the statute provides that "the court shall award ... reasonable attorney's fees." *Id.* If Congress had intended this mandatory standard to apply to all prevailing plaintiffs under ERISA, it would have said so. At the very least, if Congress had intended to adopt the § 1988 prevailing party presumption, it could have duplicated the "prevailing party" language of § 1988. Instead, Congress chose to grant the trial court the "discretion" to shift fees "to either party." § 1132(g)(1).

Nor does the "private attorney general" rationale support the majority's decision.

Unlike the civil rights statutes, ERISA does not depend primarily on fee shifting to private plaintiffs to ensure its enforcement. First, fiduciaries have a statutory duty to bring ERISA enforcement actions under certain circumstances. *Iron Workers*, 624 F.2d at 1265–66 (citing 29 U.S.C. § 1105). Second, the benefits of private suits under ERISA often flow exclusively and directly to the plaintiff, as in this case where Rodriguez sued for and received an award of pension benefits. In such cases, fee shifting is not necessary to ensure enforcement of the statute. *Iron Workers*, 624 F.2d at 1265.

Some courts have pointed to the special nature of our civil rights laws as a justification for mandatory fee shifting, and have expressly declined to extend that special status to other statutes such as ERISA. *See id.* ("policies underlying ERISA are certainly important ones, but they simply do not rise to the level of assuring that all citizens are accorded their civil rights"); *Bittner*, 728 F.2d at 829 ("nor do pension plan participants and beneficiaries constitute a vulnerable group whose members need special encouragement to exercise their legal rights, like a racial minority"). Apparently, the majority takes issue with these expressions, opining that a presumptive award of fees to prevailing plaintiffs is essential to the protection of "employee's rights" and the securing of "effective access to federal courts." I do not believe, however, that the weighing of statutory purposes and judicial assessments of the relative importance of this or that Act can be the dispositive point. The majority's view of the importance of the "remedial purposes of ERISA" is simply an insufficient justification for its usurpation of the prerogatives of Congress:

> [T]he rule suggested here and adopted by the Court of Appeals would make major inroads on a policy matter that Congress has reserved for itself.... [The] courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation ... depending on the courts' assessment of the impor-

tance of the public policies involved in particular cases.

*Alyeska Pipeline Service Co. v. Wilderness Soc.,* 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975). Here a statute that Congress "intended to trod a middle ground in the award of attorney's fees," *Gray,* 792 F.2d at 259, has been transformed by this court into an almost absolute rule directing one-way fee shifting.

## III.

For these reasons, I would join the circuits that have refused to import a mandatory fee shifting presumption into ERISA. Although the majority fails to cite any contrary authority,[3] its decision conflicts with the approach of many other circuits. *See Gordon v. United States Steel Corp.,* 724 F.2d 106, 108 (10th Cir.1983); *Ursic v. Bethlehem Mines,* 719 F.2d 670, 673 (3rd Cir.1983); *Janowski v. International Bhd. of Teamsters,* 673 F.2d 931, 941 (7th Cir. 1982), *vacated on other grounds,* 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); *Iron Workers,* 624 F.2d at 1265. *But see Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 590 (9th Cir.1984); *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1356 (8th Cir.1980). The Fifth Circuit has held that any analogy between the ERISA fees provision and the civil rights fees provisions is "unsound." *Iron Workers,* 624 F.2d at 1265. The Seventh Circuit agrees, expressly rejecting the "virtually mandatory" § 1988 standard in the context of ERISA. *Janowski,* 673 F.2d at 941. The majority opinion has also ignored the widespread insistence of still other circuits that "an award of attorney's fees under ERISA is not virtually automatic, but remains discretionary with the trial judge." *Gray,* 792 F.2d at 259; *accord Monkelis v. Mobay Chem.,* 827 F.2d 935, 936 (3d Cir.1987); *McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1572 (11th Cir.1985); *Fase v. Seafarers Welfare & Pension Plan,* 589 F.2d 112, 116 (2d Cir.1978). The majority's new standard effectively strikes the word "discretion"

from the statute and essentially abandons the five-factored inquiry that up to now was the prevailing standard in this and many other circuits.

## IV.

Finally, I think it important to explain just why the district court acted within its statutory grant of discretion in denying plaintiffs' fee application. That decision may not have been the only result the district court could have reached, but it was without question a defensible exercise of discretion—which the statute requires that we affirm. The five factors outlined in *Tenneco* do not constitute a "rigid test," but are meant only as "general guidelines for the district court judge's exercise of discretion." *Gray,* 792 F.2d at 258. Fairly applied, the *Tenneco* factors preserve the discretionary standard in the statutory text. After reviewing the district court's findings and examining the record, I think that there is substantial support for the district court's decision under the general guidelines of *Tenneco.*

At least three of the *Tenneco* factors fairly favor a denial of fees. First, the district court noted that although this court in *Rodriguez I* held that MEBA breached its fiduciary duty to Rodriguez, that holding "did not involve a finding of bad faith or culpable conduct." Under *Tenneco,* the district court is to consider the "degree of the opposing party's culpability or bad faith." The record in this case indicates that although MEBA breached its duty to notify Rodriguez of options under the pension plan, the degree of culpability or bad faith was low. The district court in *Rodriguez I* had even held that MEBA was justified in its decision to deny benefits to Rodriguez, suggesting that the wrongfulness of MEBA's conduct was an issue on which reasonable minds can differ. This court reversed the district judge on the denial of benefits, but it did not suggest that the trust had acted in bad faith; instead, we characterized MEBA's actions as "mis-

---

**3.** Indeed, the majority cites one case, *Iron Workers Local #272 v. Bowen,* 624 F.2d 1255 (5th Cir.1980), that contradicts its holding as support for it.

takes" or "misunderstandings." 872 F.2d at 74. In all events, I believe that the degree of MEBA's culpability—the extent to which MEBA's conduct is "blamable" or "wrong," *see Werner v. Upjohn Co.,* 628 F.2d 848, 856–57 (4th Cir.1980)—is an issue on which the district court's finding is entitled to deference. I would refuse to nullify the district court's discretion by broadening the concept of culpability for fee shifting purposes to encompass each and every breach of a legal duty, no matter how unintentional.

Second, the district court found that an award of attorneys' fees was not necessary as a deterrent given the notice provisions of ERISA and this court's opinion in *Rodriguez I.* Under ERISA, a district court may hold plan administrators personally liable for failing to comply with statutory notice provisions. 29 U.S.C. § 1132(c). Thus, the district court thought that there was no need for the imposition of fees as a further deterrent. Moreover, the district court apparently accepted MEBA's argument that any fee award in this case would be paid out of "monies ... held in trust for the plan and that other participants would lose by an award." Under these circumstances, I believe the district court was free to conclude, as had the Seventh Circuit, that "the deterrent effect of an award would be blunted" if it were paid out of plan assets rather than by the offending parties. *Bittner,* 728 F.2d at 829. In light of all the facts and circumstances of this case, I can find no basis—short of a per se rule expounding the economics of marginal deterrence—for rejecting the district court's judgment on this point as an abuse of discretion.

Third, the district court found, and the majority apparently agrees, that the plaintiffs' purpose in bringing this lawsuit was not to benefit other participants or to resolve a significant legal question. Rather, the district court held that plaintiffs "had their own economic interests at heart when they brought this action"—that they brought the lawsuit to recover pension benefits due as a result of MEBA's failure to provide notice of Rodriguez's options under the pension plan. Plaintiffs have made no showing that there are any similarly situated plan participants who will benefit from the lawsuit. Although the case decided an important jurisdictional question, that issue was raised by the defendants. The district court thus concluded that "[t]here are few, if any, real benefactors of this litigation other than this plaintiff." Economic self-interest legitimately fuels vast amounts of litigation, and the district court was within its discretion in concluding that it would spur this kind of litigation without the added incentive of a fee award.

Finally, I note that although the district court found that two of the *Tenneco* factors favored a fee award, it found that there were countervailing circumstances in each instance. As to the merits of the parties' positions, the district court found that there was room for "honest disagreement as to the issues and the balance does not overwhelmingly favor plaintiff." With regard to the defendant's ability to pay, the district court apparently thought that a fee award from funds held in trust would only draw upon plan assets available to other plan participants.

In light of the above, I cannot concur in overturning the district court's decision as an abuse of discretion. The majority has asked, in effect, whether it agrees with the trial court, not whether the trial judge might reasonably have made the discretionary judgment that it did. Standards of review exist to rein in such appellate tendencies. "An appellate court ... cannot quarrel with varying results among independently-minded trial judges that merely reflect differences in their individual judgments." *Ballard v. Schweiker,* 724 F.2d 1094, 1098 (4th Cir.1984). We may reverse the district court's decision only if we have the "definite conviction that the court made a clear error of judgment in its conclusion upon weighing the relevant factors." *Hummell,* 634 F.2d at 452. The district court properly considered each of the concerns outlined in *Tenneco* and made findings that are logically sound and supported by the record. The court then exercised the discretion conferred on it by statute, weighing and balancing the relevant

factors and ultimately deciding to deny plaintiffs' fee application. Finding no basis to disagree with this decision other than a judge-made rule that all prevailing ERISA plaintiffs must recover attorneys' fees, I would affirm the judgment.