Gerald S. FREEDMAN, et al., Plaintiffs,

v.

TEXACO MARINE SERVICES, INC., et al., Defendants.

No. 1:94–CV–1.

United States District Court,
E.D. Texas,
Beaumont Division.

March 16, 1995.

Terry W. Wood, Scott Cohran Crutchfield, Crutchfield Decordova & Beaumont, TX, for plaintiffs.

Michael G. McQueeney, Joseph P. Moan, Texaco Inc., Houston, TX, Robert J. Hambright, Orgain, Bell & Tucker, Beaumont, TX, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiffs, Gerald Freedman, Mervyn Hutton, Peter Ridley, Michael Rushbrook, Gary Skipp, Neil Spiller, and David Vann, are employees of Texaco Marine Services, Inc. (Texaco Marine). Before working for Texaco Marine, Plaintiffs were employed by Texas Overseas Tankships LTD (Tankships) in the United Kingdom. While in the employ of Tankships, each of the Plaintiffs participated in the British Merchant Navy Officer's Pension Fund (MNOPF). The MNOPF is an industry group pension plan. Texaco participates in the MNOPF by contributing a sum of money to the fund on behalf of each employee.

Due to a corporate reorganization, Plaintiffs were reassigned from Tankships to Texaco Marine, which is located in Port Arthur, Texas. Once they were transferred to Texaco's United States payroll, Plaintiffs became participants in the Retirement Plan of Texaco, Inc. (Texaco Plan).

There is much dispute about what happened next.

Plaintiffs contend that John Ambler, the Texaco Plan administrator, informed them that any pension they would be entitled to under the MNOPF would not be used to offset the amount of their Texaco Plan pension.

Defendants maintain that the provisions of the Texaco Plan clearly state that the amount of the Texaco Plan pension can be reduced by the amount of pension benefits generated from Texaco contributions to another pension plan. Texaco asserts that the MNOPF pension can be used to offset Texaco Plan benefits. Texaco contributed to the MNOPF for each of the Plaintiffs. Texaco now contends that each Plaintiff's Texaco Plan pension can be reduced by that portion of a Plaintiff's MNOPF pension that is attributable to Texaco contributions.

Plaintiffs do not dispute that the Texaco Plan falls within the purview of ERISA.

Plaintiffs, alleging breach of contract, fraud and violations of the Employee Retirement Income Security Act (ERISA), brought suit in state court. Defendants removed the case to this court pursuant to 28 U.S.C. § 1441.

Defendants now move for summary judgment. They contend that the state law claims, namely breach of contract and fraud, are preempted by § 514(a) of ERISA. They assert that the ERISA claim is ineffective as it is based on the oral representations of Defendant Ambler and not based on a "written instrument" as required by the ERISA statute. *See Degan v. Ford Motor Company,* 869 F.2d 889, 895 (5th Cir.1989); 28 U.S.C. § 1202(a)(1).

For the reasons set out below, the court is of the opinion that Defendant's Motion for Summary Judgment should be granted.

### PREEMPTION

Plaintiffs maintain that, under established Texas law, any oral misrepresentations made by Ambler was a breach of contract and fraud. Defendants assert that these claims are preempted by ERISA. Defendants' argument is more persuasive.

■ It is well-settled that § 1144(a) of ERISA preempts state law with broad strokes. *See* 29 U.S.C. § 1144(a). As the Supreme Court stated in *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), "[t]he preemption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA." *FMC Corp.,* 498 U.S. at 58, 111 S.Ct. at 407.

■ The Fifth Circuit has already determined that claims of fraud and breach of contract which stem from an attempted oral modification of a written ERISA plan are sufficiently "related to" ERISA to be preempted by § 1144(a). *Lee v. E.I. DuPont de Nemours and Co.,* 894 F.2d 755, 757 (5th Cir.1990) (state law fraud and misrepresentation claims preempted); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1295 (5th Cir.1989) (breach of contract claim preempted). Plaintiffs' claims of fraud and breach of contract are clearly preempted by ERISA.

### ERISA Claims

#### I.

Defendants move for summary judgment as to Plaintiffs' ERISA § 1132 claims. *See* Fed.R.Civ.P. 56(c).

#### II.

Plaintiffs allege that Defendants violated section 1132(b) of ERISA by failing to abide by the explicit terms of the Texaco Plan. The relevant language of the Texaco Plan provides:

> If any Member shall become entitled to or shall be paid any retirement income-type payment ... which the Employer shall have directly or indirectly contributed [the MNOPF] ... any retirement income provided under this [the Texaco] Plan ... which is provided by Employer contributions and to which he is entitled hereunder may, depending on the nature and purpose of such benefit, be decreased by the portion of any such payments to which he or she is entitled as a result of Employer contributions.

#### The Retirement Plan of Texaco, Inc., Article XI, no. 2.

■ When an ERISA benefit plan gives the plan's administrator or fiduciary *discretionary* authority to determine eligibility for benefits or to construe the terms of the plan, the court will disturb the decisions of the administrator only if there is a clear abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Plaintiffs do not dispute that the Texaco Plan Administrator has broad discretion to administer the Texaco Plan. *Plaintiffs' Response to Defendants' Motion for Summary Judgment.* Accordingly, the court's task is to determine whether a "genuine issue of material fact" exists as to whether the Texaco Plan's administrator abused his discretion when he used the MNOPF to offset Plaintiffs' benefits under Article XI, no. 2 of the Texaco Plan. *See* Fed.R.Civ.P. 56(c).

■ This inquiry is twofold. First, the court determines whether the administrator's interpretation of the Plan is "legally correct." If the court finds the administrator's interpretation to be legally correct, the administrator has not abused his discretion and the inquiry ends. If the court decides that the administrator's interpretation is not legally correct, the court then inquires as to whether the administrator's actions amount to an "abuse of discretion." *See Jones v. Sonat, Inc. Emp. Ben. Plan,* 997 F.2d 113, 115–16 (5th Cir.1993); *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir.), *cert. denied,* 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990); *Batchelor v. Inter. Broth. of Elec. Workers,* 877 F.2d 441, 444 (5th Cir.1989).

■ To decide whether the administrator's interpretation of the Texaco Plan is legally correct, the court considers: (1) whether the administrator has uniformly construed the relevant language in the past; (2) whether the administrator interpretation is consistent with a fair reading of the plan; and (3) whether the interpretation results in any unanticipated costs. *Jones,* 997 F.2d at 115.

■ Plaintiffs, in their response to Defendant's Motion for Summary Judgment, incorrectly treat each of the three elements outlined in *Jones* as independent criterion which must be met before an administrator's interpretation will be "legally correct." This is misguided. The Fifth Circuit has clearly stated that the district courts are to *consider* each of these elements. It is obvious that, in certain situations, some of the elements will be more revealing than the others. For example, when the language being construed is subject to only one plausible interpretation

or "fair reading," uniformity of application and unanticipated costs will dwindle in significance. However, when the language is vague and subject to many reasonable interpretations, uniformity of application and the unanticipated costs associated with each interpretation will become more telling.

The language under scrutiny is extremely straightforward. It clearly states that Texaco reserves the right to use any benefits generated from *Texaco* contributions to a plan such as the MNOPF to offset benefits under the Texaco Plan.

Article XI, no. 2 of the Texaco Plan has only one reasonable interpretation. Texaco may offset a Texaco Plan participant's benefit by the amount of benefits generated from Texaco contributions to the MNOPF. This interpretation of the Texaco Plan, which is proffered by Defendants in their summary judgment motion, is legally correct. Any "fair reading" of the Texaco Plan leads to the conclusion that Texaco is entitled to this offset. The court, therefore, need not address the question of whether the plan administrator's interpretation constituted an abuse of discretion. Summary judgment in favor of the administrator's current interpretation is proper.

### III.

Plaintiffs find themselves in an unusual situation. They lose Defendant's Motion for Summary Judgment but, because of the genesis of the case, are situated to receive attorney's fees under 29 U.S.C. § 1132(g)(1).

■ A district court has discretion, pursuant to 29 U.S.C. § 1132(g)(1), to award reasonable costs and attorney's fees to a pension plan participant who brings an ERISA action. *Self–Insurance Institute of America v. Korioth,* 32 F.3d 175, 178 (5th Cir.1994). In deciding whether attorney's fees are an appropriate remedy, the court should

consider such factors as the following: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing par-

ties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties positions. No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g).

*Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980) (footnotes and citations omitted).

■ In Defendant's Motion for Summary Judgment, Defendant contends that it seeks only to enforce the clear language of the Texaco Plan. Specifically, Defendants maintain that they will offset each Plaintiff's Texaco Plan pension by the amount of the benefit generated by *employer* contributions to the MNOPF. As noted above, this is a legally correct interpretation of the Texaco Plan, Article XI, no. 2. This, however, has not always been Defendants' interpretation of the Texaco Plan.

At the summary judgment hearing, Defendants admit that they were initially of the opinion that Texaco was entitled to offset Plaintiffs' Texaco Plan benefits by the amount of benefits generated by both the employer *and employee* contributions to the MNOPF. This view is confirmed by the deposition of Mr. Kevin Patten, the Texaco employee who calculated the MNOPF offset amounts. Mr. Patten testified at deposition that it was likely that the figures used to offset the Plaintiffs' Texaco Plan benefits represented both employer and employee contributions to the MNOPF. Patten Depo. at 86.

This court holds that Defendants' initial interpretation of the Texaco Plan is indefensible. The clear language of Article XI states that *only employer contributions* can be considered when offset calculations are made. Accordingly, reasonable attorney's fees and costs are appropriate under the standards outlined in *Iron Workers.*

At least four of the *Iron Workers* factors support an award of reasonable attorney's fees and costs to Plaintiffs. When Defendants adopted a reading of the Texaco Plan that was facially inconsistent with the clear mandate of Article XI, no. 2, their actions were culpable and, very possibly, in bad faith (factor one). Defendants are clearly able to satisfy an award of attorney's fees (factor two). Awarding attorney's fees in this case may deter future corporate defendants from adopting, as their initial position, an interpretation of a pension plan that is wholly unsupported by the text of the plan (factor three). Moreover, there is no question that there was little or no merit to Defendants' original interpretation of the Texaco Plan (factor five).

If the court failed to award reasonable attorney's fees and costs to Plaintiffs, it would be implicitly condoning the unreasonable actions of Defendants; this it cannot do. Accordingly, Defendants are ordered to pay all of Plaintiffs' reasonable costs and attorney's fees associated with this litigation. If the parties cannot agree upon what are reasonable costs and attorney's fees, the court will hear this matter to make a final disposition.

## ORDER

Since Defendants' current interpretation of the Texaco Plan is legally correct, Defendants' Motion for Summary Judgment is GRANTED. Due to their initial position which precipitated this litigation, Defendants are ordered to pay to Plaintiffs reasonable costs and attorney's fees associated with this litigation.