**Joe E. PHILLIPS, et al**

v.

**MARITIME ASSOCIATION, L.L.A. LOCAL PENSION PLAN, et al.**

**No. 1:99–CV–0181.**

United States District Court, E.D. Texas, Beaumont Division.

March 7, 2002.

840

Christopher Matthew Parks, Parker & Parks, Port Arthur, TX, Jay W. Eisenhofer, Abbott A. Leban, John Kairies, Grant & Eisenhofer, Wilmington, DE, for plaintiffs.

John H. Smither, Vinson & Elkins, Houston, TX, for defendants.

### MEMORANDUM ORDER

COBB, District Judge.

## I. INTRODUCTION

The court is extremely familiar with the facts of this case and all of the proceedings in this court. On October 5, 2001, this court filed its Memorandum Opinion and Order granting plaintiffs' motion for partial summary judgment in part and de-

nying defendant's motion for summary judgment in its entirety. On plaintiffs' further motion for judgment submitted pursuant to the court's direction, the court filed its final order and judgment in favor of plaintiffs on November 5, 2001, reserving jurisdiction solely for the purpose of entertaining and disposing of plaintiffs' present motion for an award of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

## II. COURSE OF THE CASE

This case has been hard fought over the course of two and a half years and, through the diligent efforts of counsel, plaintiffs have now reached a very successful conclusion. The court has ordered the Plan to cease its recoupment efforts from plaintiffs and to refund to plaintiffs those amounts already recouped. An award of reasonable attorneys' fees and costs here would provide the incentive for qualified counsel to take ERISA benefit cases that otherwise would not be likely to attract counsel able to achieve comparable results. The facts and circumstances show that the efforts of plaintiffs' counsel in conducting this litigation were necessary and reasonable to achieve the favorable result reached for plaintiffs.

In December 1998, Grant & Eisenhofer, P.A. (the Firm) was contacted by the Deputy Director of the Pension Rights Center, located in Washington, D.C., about investigating a possible claim by plaintiff Phillips against the Plan and perhaps others associated with the Plan. That firm conducted an extensive investigation into the facts of Phillips' case, and concluded that the Plan's error that required the correction of Phillips' benefits was not an isolated clerical error, but rather that there had been systemic mistakes in the processing and calculation of benefits under Qualified Domestic Relations Orders submitted by the

Plan over a period of years. Further, it was determined there was no Plan document setting forth the Plan's rules and procedures for handling the qualifying QDROs, a fact consistent with the Plan's likely breach of ERISA mandates and suggesting that, with numerosity, Phillips' potential claims for relief against the Plan and others could be pursued as a class action.

After being employed by Phillips, the firm obviously researched applicable ERISA law, and associated counsel located within the Eastern District of Texas, and filed a 42–page Class Action Complaint on April 1, 1999. After defendants' answer, the parties timely exchanged their initial disclosures pursuant to Local Rule CV–26. During the second and third quarters of 1999, counsel (a) provided initial disclosures to defendants, (b) analyzed the defendants' initial disclosures, (c) prepared and served Phillips' first set of document requests and interrogatories, and (d) analyzed the defendants' responses to discovery.

At the first case management conference, held October 18, 1999, Phillips' counsel expressed dissatisfaction with the defendants' initial disclosures. On questioning by the court, counsel for the defendants acknowledged that approximately 65 QDRO files had been reviewed by the Board and its professionals in the latter part of 1996, and none of those files had been produced. The court directed the defendants to turn over copies of those 65 files to Phillips, which defendants

finally did during the last quarter of 1999. The firm then acted, in effect, as a "private" Department of Labor in conducting a full analysis of those files.[1] *See* Eisenhofer Decl. At ¶ 11.

In January 2000, the firm took the depositions of a long-service Plan Trustee, Ted Thorjussen, and the Administrator, Hunt. It was also during this period that the firm first made contact with and interviewed other QDRO beneficiaries, who the files showed were members of the putative "QDRO Sub–Class" as defined in the original Class Action Complaint and who had personal knowledge relevant to the proposed class action. *See* Eisenhofer Decl. at ¶ 11.

A second case management conference was held on February 9, 2000, resulting in the Docket Control Order entered by this court on March 28, 2000. Pursuant to leave to amend and add new parties as granted by that order, three new plaintiffs, Doublin, Gutierrez, and Davis were joined with Phillips as the named plaintiffs in the Amended Complaint (the "Complaint") filed with the court on April 17, 2000. *See* Eisenhofer Decl. at ¶ 12.

A number of additional depositions were noticed, prepared for and taken, and other discovery was conducted by the firm during the second and third quarters of 2000. In addition, the firm spent significant time and effort helping plaintiffs respond to defendants' discovery requests. During the course of those discovery efforts, the firm identified a number of discovery issues

1. Phillips' counsel received no help in investigating or pursuant Phillips' claims from the U.S. Department of Labor. The DOL's Pension and Welfare Benefit Administration field office in Dallas had already inquired into the Phillips matter after receiving a congressional inquiry. Unfortunately, the individual responding to the PWBA inquiry was Patrick J. Flynn, plan counsel and the person who "precleared" Phillips' and other QDROs without any understanding of ERISA's technical qualification requirements for pre-retirement QDROs. In his response to the PWBA official, Flynn fully supported the actions taken by the Board to "correct" the mistaken overpayments without revealing his own responsibility for clearing the QDRO amounts paid to Phillips and actually calculating the amounts for other DROs, such as Doublin's and Davis'. The DOL took no further action.

which had gone unresolved since the court's first case management conference. These included the defendants' failure to produce documents communicating any advice or guidance received from attorneys acting for the Plan in connection with the implementation of the REA amendments to ERISA that became effective in 1985, including Plan rules and procedures. *See* Eisenhofer Decl. at ¶¶ 13–15. Only after plaintiffs' counsel sent a letter dated August 5, 2000, to counsel for the defendants demanding production of one such document was it eventually included in defendants' supplemental document production.

In mid-November 2000, plaintiffs filed a motion for partial summary judgment on the First, Second, Fourth, and Ninth claims of the Complaint. Defendants filed a motion for summary judgment as to all claims.[2] On October 5, 2001, this court granted plaintiffs' motion for partial summary judgment in part, and denied defendants' motion for summary judgment in its entirety. The court found that there was a blatant breach of the fiduciary duties owed to plaintiffs and ordered that the Plan cease its recoupment efforts and refund the amounts already recouped, with interest. *See* Mem.Op. At 11, 13. In light of the successful result achieved, plaintiffs now seek an award of reasonable attorneys' fees and expenses under Section 502(g)(1) of ERISA. The law, facts, and equities of this case warrant such an award, but the amount requested is some-what in excess of a reasonable amount, as the court will explain herein.

## III. *ANALYSIS*

■ Section 502(g)(1) of ERISA provides that, in actions brought by a plan beneficiary under ERISA, the court, in its discretion, may award reasonable attorneys' fees and costs to either party. 29 U.S.C. § 1132(g)(1), *See also Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995); *Martin v. Metropolitan Life Ins. Co.*, 2000 WL 554199, (N.D.Tex. May 4, 2000). The purpose of this provision is to ensure that competent counsel will be available to help enforce the retirement and pensions rights of participants and beneficiaries of ERISA plans. *Conner v. Mid South Ins. Agency, Inc.*, 943 F.Supp. 663, 665 (W.D.La.1996) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir.1987)) ("attorney fee provisions should be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved").

■ The determination of attorneys' fees requires a district court to apply a two-step analysis. *Todd*, 47 F.3d at 1459; *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 833 (5th Cir.1996). The court must first determine whether the party is entitled to attorneys' fees by applying the five factors enumerated in *Iron Workers Local #272 v. Bowen*, 624 F.2d 1255 (5th Cir.1980).[3] If

---

**2.** During the briefing on the summary judgment motions, defendants also filed a motion to strike and objections to the declarations submitted in support of plaintiffs' motion for partial summary judgment and a motion to strike plaintiffs' reply brief. This required plaintiffs to fully research and brief these additional issues.—

**3.** These factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Id.* at 1266.

the court concludes that a party is entitled to attorneys' fees, it must then determine the amount to be awarded. *Todd*, 47 F.3d at 1459. This determination is made by calculating the lodestar figure by multiplying the number of hours expended on the case by a reasonable hourly rate. *Id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)); *Bellaire*, 97 F.3d at 833. The facts and circumstances involved in the present case show that plaintiffs should be awarded fees and costs, but not necessarily in the amounts requested.

## A. PLAINTIFFS ARE ENTITLED TO FEES AND EXPENSES UNDER ERISA

■ The Fifth Circuit has made clear that none of the five factors identified in *Bowen* are decisive, but that together "they are the nuclei of concerns that a court should address in applying section 502(g)." *Bowen*, 624 F.2d at 1266; *Riley v. Administrator of Supersaver 401K Capital Accumulation Plan for Employees of Participating AMR Corp. Subsidiaries*, 209 F.3d 780, 782–83 (5th Cir.2000). No one factor should be given predominance or preclusive effect. *Martin*, 2000 WL 554199 at *2. The court must also consider any relevant factors that are not specifically enumerated in the five factors. *Id.* at *1. An analysis of the relevant factors favors an award of attorneys' fees and costs to plaintiffs' counsel.

### 1. The Degree of the Opposing Parties' Culpability or Bad Faith

■ In holding whether an award of attorneys' fees is appropriate, the court should first consider the degree of the opposing parties' culpability or bad faith. *Schadler v. Anthem Life Ins. Co.*, 2000 WL 134761, *1 (N.D.Tex. Feb.3, 2000). A party's conduct may rise to the level of bad faith where there is a breach of fiduciary

duty. *Id.; Wright v. Nimmons*, 641 F.Supp. 1391, 1408 (S.D.Tex.1986). Bad faith can also be found where a defendant asserts meritless defenses. *Unum Life Ins. Co. of America v. Brandon*, 2000 WL 175363, *2 (N.D.Tex. Feb.14, 2000) 1 *Freedman v. Texaco Marine Servs., Inc.*, 882 F.Supp. 580, 584–85 (E.D.Tex.1995).

The court's memorandum opinion dated October 5, 2001, expressly found that "Hunt breached her fiduciary duty to the plaintiffs." Mem. op. At 8. This court found that the breach was "blatant." *Id.* at 11. The court detailed the effect this breach had on plaintiffs:

> These older women depended on the dollar amounts not only stated in the QDROs and by Hunt, but actually distributed to them for years, when planning for the rest of their lives. The neither knew nor had reason to know that the monthly benefits were incorrect. Plaintiffs suffered, and continue to suffer as a result of Maritime's recoupment efforts.

*Id.* at 9. Further, the court's denial of defendants' summary judgment motion *in toto* implicitly determined that defendants' argument of the "exhaustion" requirement against plaintiffs Gutierrez and Davis was meritless.

Adding to the defendants' bad faith is the issue of the document they improperly withheld from production to plaintiffs—the April 1986 letter, sent by Alan J. Robins of Vinson & Elkins LLP to Hunt's predecessor, enclosing proposed procedures for dealing with QDROs. If the Plan had followed those procedures, the mistakes in calculating plaintiffs' benefits would not have occurred and the resultant harm caused by those mistakes could well have been avoided. Defendants' extreme reluctance to produce this letter compounds their misconduct.

### 2. *The Ability of the Opposing Party to Pay the Fees*

The second factor to be considered is whether defendants are able to pay an award of fees and expenses. *Martin*, 2000 WL 554199 at *3. There is no doubt that the Plan has assets sufficient to pay the fees and expenses this court awards. *See id.* (major insurance company would be able to pay attorneys' fees and costs). Moreover, the Plan is covered by a Fiduciary Liability insurance policy with policy limits of $10 million. The fees can also be assessed jointly and severally against all of the defendants, giving the Plan recourse against the other culpable defendants. *Wright v. Nimmons*, 641 F.Supp. 1391, 1408 (S.D.Tex.1986) (attorneys' fees jointly and severally assessed against pension plan and individual defendant who acted in bad faith and in intentional disregard of fiduciary obligations).

### 3. *Whether an Award of Attorneys' Fees would Deter Other Persons Who Will Be Acting Under Similar Circumstances*

The third factor to be considered is the deterrent effect of a fee award. *Unum*, 2000 WL 175363 at *3; *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir.1997). Where there is no finding of bad faith or culpability, this factor carries less force because there is no behavior to deter. *Schadler*, 2000 WL 134761 at *3. An award of attorneys' fees in this case will serve as a warning to other plans that they must ensure that adequate QDRO procedures are adopted and implemented. Moreover, since this court found that there *was* a breach of fiduciary duty in this case, this factor weighs heavily in favor of an award of attorneys' fees.

### 4. *Whether the Party Seeking Attorneys' Fees Sought to Benefit All ERISA Participants or Beneficiaries or to Resolve a Significant Legal Issue.*

The fourth factor is whether the plaintiffs sought to benefit all ERISA participants or beneficiaries or to resolve a significant legal issue. *Martin*, 2000 WL 554199 at *3 (no award of attorneys' fees where plaintiff sought only to recover disability benefits owed); *Schadler*, 2000 WL 134761 at *3 (plaintiffs' purpose in litigating the case was to benefit herself rather than all ERISA participants or beneficiaries). Plaintiffs in this case sought not only to recover amounts due to them individually but also to force the Plan to adopt proper procedures for dealing with QDROs as is required by ERISA.[4] Although the court did not award an injunction in plaintiffs' favor on this issue, subsequent to the filing of this action the Plan has begun to formally implement procedures for the Plan to follow in administering QDROs. *See* defendants' motion for summary judgment at 27, note 13. This will benefit future alternate payees, including minor children in some cases, whose benefits may now be handled and calculated correctly by the Plan. Additionally, other plans will recognize the need to adopt adequate procedures for dealing with QDROs, avoiding the issues which have arisen in this case.

### 5. *The Relative Merits of the Parties' Positions*

Finally, the court must consider the relative merits of the parties' positions. *Martin*, 2000 WL 554199 at *3. Where summary judgment is granted in favor of one of the parties, the factor weighs in

---

4. This action was originally brought on behalf of a putative class of similar situated QDRO beneficiaries. Although a class was not certified, the claims of the four individual plaintiffs will benefit all alternate payees who now will have their benefits calculated accurately.

favor of the award of fees. *Wegner*, 129 F.3d at 822. Here, the court granted plaintiffs' motion for partial summary judgment in part, and ordered that (1) the Plan cease deducting the recoupment amount from what would be the actuarially correct amount had the overpayments not been made and (2) that the Plan refund plaintiffs the difference between the actuarially correct amount had the overpayments not occurred and the amount the Plan has paid them in an attempt to recoup the past overpayments, with interest. In contrast, defendants' motion for summary judgment was denied in its entirety.

In summary, the facts and circumstances of this case clearly support an award of attorneys' fees and costs. As this court stated in *Freedman v. Texaco Marine Services, Inc.*, 882 F.Supp. 580, 585 (E.D.Tex.1995), "[i]f the court failed to award reasonable attorney's fees and costs to plaintiffs, it would implicitly be condoning the unreasonable actions of defendants; this it cannot do."

### B. *PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IS APPROPRIATE*

 In the Fifth Circuit, once a district has concluded that a party is entitled to attorneys' fees, it must utilize the lodestar method to determine the amount to be awarded. *Todd*, 47 F.3d at 1459. The court determines the lodestar amount by multiplying the reasonable number of hours expended on the litigation by a reasonable hourly rate for the participating attorneys. *Wegner*, 129 F.3d at 822. The lodestar figure is a presumptively reasonable fee. *In re Charter Graphic Services, Inc.*, 230 B.R. 759, 771 (Bkrtcy.N.D.Tex. 1998). The court may, however, adjust the lodestar upwards or downwards depending on the circumstances of the case after assessing the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974). Plaintiffs in this case are requesting fees of $309,641.75 and costs and expenses of $52,378.83, or a total of time and expenses of both the firm and plaintiffs' local Texas counsel.

 Plaintiffs' counsel spent an aggregate of 1,451.40 hours litigating this case. This includes the pre-complaint investigation, drafting the class complaint and the amended complaint, maintaining communications with four different plaintiffs related only by the nature of their claims, extensive document and deposition discovery, and briefing on the cross-motions for summary judgment, as well as other motions. These hours were reasonable and necessary in order to obtain the favorable result achieved on behalf of plaintiffs, except for 30 hours by Mr. Leban on class certification, which was not necessary.

 These hours were billed at reasonable rates given the participating attorneys' level of experience and the prevailing rate in the community. Jay W. Eisenhofer, a partner at the Firm, billed at $295.00 per hour. The court has reduced this to $275.00 per hour. Abbott A. Leban, senior counsel, billed at $250.00. Christine S. Bulman, an associate at the Firm, billed at $190.00 per hour, which has been reduced to $175.00 an hour. Several paralegals billed at a rate of $95.00. These rates are reasonable. *See In re Charter*, 230 B.R. at 772 (fees approved where plaintiffs' attorneys' hourly rates are within the prevailing standards in the community).

 A review of the *Johnson* factors applicable to this case demonstrates that the lodestar is a reasonable amount.

### C. *THE TIME AND LABOR REQUIRED; TIME LIMITS IMPOSED BY THE CLIENTS OR OTHER CIRCUMSTANCES.*

Plaintiffs originally filed this action on behalf of a class. Plaintiffs' counsel spent

numerous hours reviewing more than 60 QDRO files to investigate the Phillips matter as a potential class case. The amended complaint was brought on behalf of four unrelated individuals with different operative facts to plead and prove. Discovery was extensive and involved numerous documents as well as seven depositions taken and four defended. This litigation was hard fought and took place over the course of two and a half years. Thus, substantial time and labor was required. However, because of the experience and expertise of plaintiffs' counsel, they were able to ensure that only the necessary time was spent on the effort. *See Garza v. Sporting Goods Properties, Inc.,* 1996 WL 56247, *30 (W.D.Tex. Feb.6, 1996) (multiplier allowed where expertise of counsel resulted in a reduced lodestar). Therefore, 1,451.40 hours over a three-year period of time, inclusive of pre-suit investigation and research, is reasonable under the facts and circumstances of this case, except for the reductions made by the court.

### D. THE NOVELTY AND DIFFICULTY OF THE QUESTIONS.

This case involved complex questions under ERISA, implicating definitional issues, actuarial considerations, fiduciary responsibilities, exhaustion of remedies, available equitable remedies and other evidentiary and discovery challenges. All of these issues required a thorough analysis of applicable precedent. *See Johnson,* 488 F.2d at 718 (counsel should be compensated for accepting the challenge to undertake new or difficult issues). Additionally, plaintiffs' counsel did not have the benefit of a government agency's involvement. *Garza,* 1996 WL 56247 at *30 (multiplier justified where no government agency involved in investigation). As the court in *Garza* stated, "had an agency of the United States undertaken this litigation, the court suspects far more taxpayer dollars would have been spent than the amount sought by class counsel as reasonable compensation." *Id.* Thus, the requested lodestar is reasonable compensation for plaintiffs' counsel in this case.

### E. SKILL REQUISITE TO PERFORM THE LEGAL SERVICE PROPERLY.

Plaintiffs' counsel are skilled litigators with extensive experience in complex litigation. *See* Eisenhofer Decl. at ¶ 26; Leban Decl. at ¶¶ 9, 13, 17. Their expertise was necessary to adequately pursue plaintiffs' claims. As the district court in *Conner v. Mid South Insurance Agency, Inc.,* stated:

> Like the world-class figure skater who 'effortlessly' lands triple axels, a well-prepared and highly skilled attorney can make difficult legal problems seem easy. While some tasks require almost the same amount of time regardless of the attorney's overall ability, at the margin, an attorney with greater expertise in a particular area will have a greater likelihood of success though he bills the same number of hours. That greater likelihood of success can make a difference both to the client's ability to vindicate his ERISA rights as well as developing ERISA law.

*Conner,* 943 F.Supp. at 669.

### F. PRECLUSION OF OTHER EMPLOYMENT.

Plaintiffs' counsel were forced to forego other work or set that work aside in order to execute their responsibilities in this case. *See* Leban Declaration at ¶ 17; *Johnson,* 488 F.2d at 718 (this factor refers to both available business that is foreclosed and the fact that counsel cannot work on other matters once the employment is accepted).

### G. *THE CUSTOMARY FEE; WHETHER THE FEE IS FIXED OR CONTINGENT.*

 Plaintiffs had a contingent fee arrangement with counsel. However, reimbursing counsel from plaintiffs' monetary recovery would both diminish the recovery plaintiffs were awarded and punish counsel for the extensive work they put into the case. Thus, the fact that counsel had a contingent fee arrangement with plaintiffs does not warrant any reduction in the fee award requested. It is also not unusual in fee-shifting cases for the attorneys' fees to exceed the monetary recovery. *Hollowell v. Orleans Regional Hospital LLC*, 217 F.3d 379, 392 (5th Cir.2000) (the Fifth Circuit has declined to adopt a rule of proportionality between damages and attorneys' fees) (citing *Cobb v. Miller*, 818 F.2d 1227, 1235 (5th Cir.1987)). Additionally, plaintiffs' counsel has advanced all of the costs of this litigation with no guarantee that those funds would ever be reimbursed. *Garza*, 1996 WL 56247 at *32 (financial burden on counsel who advanced tens of thousands of dollars in expenses supports multiplier to lodestar).

### H. *THE UNDESIRABILITY OF THE CASE.*

This factor is meant to encourage competent counsel to represent plaintiffs in matters that affect important individual rights. *Johnson*, 488 F.2d at 718. Clearly, it would be difficult to get competent lawyers to take on extensive ERISA litigation and pursue it over the course of several years if they were not compensated in a manner commensurate with the task and the risk. This case involved the risk of no recovery. The situation that plaintiff Phillips found herself in is indicative of the undesirability of this case: she talked to two attorneys in Texas who told her that it was not economically feasible to represent her given the amount of money involved. *See* Ferguson declaration at ¶ 7. Even af-

ter the Pension Rights Center sought to help Phillips find competent counsel, she was unable to find Texas counsel interested in taking the case. *Id.* at ¶ 8. Thus, plaintiffs were only able to pursue their claims because the firm agreed to represent them at no small risk to the firm.

### I. *AWARDS IN SIMILAR CASES.*

Although the facts of this case are unique, similar fee awards have been routinely approved in ERISA actions. *See e.g. Wright*, 641 F.Supp. at 1408 (fee awarded of $240,000); *In re Charter Graphic*, 230 B.R. at 774 ($231,442 in fees and $64,697.99 in expenses awarded).

 Plaintiffs' cost and expenses to the extent modified above are also reasonable. Of that amount, $11,500 is attributable to Kent Spade, plaintiffs' actuarial expert. *See* Spade Decl. at ¶ 12. Mr. Spade's expertise was necessary for counsel to have at their disposal regarding certain Plan features, to make a report embodying actuarial calculations for determining the amounts of monetary relief, to collect data on annuity costs in the insurance market, and to calculate the prejudgment interest on the lump-sum refunds due plaintiffs. The remainder of the costs are for the expenses of travel, duplication, postage, legal research and other costs necessary for the successful litigation of this case. Expenses were minimized by sending only one attorney to each deposition and attempting to consolidate travel where possible. Such costs incurred are reasonable in light of the circumstances and should be reimbursed in full.

Plaintiffs in this case are requesting fees of $309,641.75 and costs and expenses of $52,378.83, or a total of time and expenses of both the firm and plaintiffs' local Texas counsel.

 Despite the successful prosecution of this case for the named plaintiffs, the

court has reviewed the fees and expenses sought and denies the total sought by plaintiffs' counsel. The Eisenhofer billing rate is reduced to $275.00 per hour. It is this court's opinion that the hourly rate should be reasonable in the community where the plaintiffs brought suit, and not necessarily in Wilmington, Delaware. The Leban billing rate is approved at $250.00 per hour. The billing rate of Ms. Bulman is to be set at $175.00 per hour. The billing rate and time expended by Parker and Parks at $175.00 per hour is approved. The expenses for copying are set at 15 cents per page, in lieu of 25 cents. All other expenses sought are approved by the court.

I find that all of the above fees and expenses are reasonable and necessary and ORDERED to be paid by the defendants on or before March 22, 2002. If paid after that date, they shall bear interest at the rate of 2.28% per annum until paid. Thus, the amount of fees awarded to plaintiffs' attorneys if $283,809.00, and the expenses necessarily expended is a total of $32,298.70, for a total of $316,107.00.